**Fulbright & Jaworski l.l.p.**
A Registered Limited Liability Partnership
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
www.fulbright.com

**kbreen@fulbright.com**
**direct dial: (212) 318-3340**

**telephone: (212) 318-3000**
**facsimile: (212) 318-3400**

May 12, 2006

**CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY**

**BY FACSIMILE AND FEDERAL EXPRESS**

Hon. Robert Johnson
District Attorney, Bronx County
The Office of the Bronx County District Attorney
198 East 161st Street
Bronx, NY 10451

Re: Bernard Kerik

Dear Mr. Johnson:

We submit this letter at the invitation of Thomas Leahy to set forth our position as to why your office should not pursue a criminal prosecution against our client, Bernard Kerik. We submit this letter as an offer of settlement pursuant to CPLR § 4547. Your office agrees that neither the fact of this offer of settlement, nor any statements made herein, are admissible in any proceeding. We also understand that your office will treat this letter as strictly confidential.

As explained below, we believe that the contemplated prosecution of Mr. Kerik is fraught with legal and factual infirmities. First, we believe that any prosecution of Mr. Kerik would likely be time-barred. Moreover, even viewing the evidence in the light most favorable to the People, there is a serious question as to whether the People could satisfy its burden of proof, particularly with respect to the state of mind element. In light of these issues, and as a matter of equity, we propose that your office agree to a non-prosecution of Mr. Kerik, a condition of which would be his simultaneous settlement of civil charges as described below.

A. The Contemplated Charge

We understand that your office is considering a charge of bribe receiving in the second degree. That offense is defined under Penal Law § 200.11 (2006):

> A public servant is guilty of bribe receiving in the second degree when he solicits, accepts or agrees to accept any benefit valued in excess of ten thousand dollars from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will

Houston • New York • Washington DC • Austin • Dallas • Los Angeles • Minneapolis • San Antonio
Dubai • Hong Kong • London • Munich • Riyadh

> thereby be influenced. Bribe receiving in the second degree is a class C felony.

We understand the crux of the People's theory to be as follows: (a) Mr. Kerik accepted a thing of value, namely renovations on his Bronx apartment in excess of what he paid for himself; (b) the person who conferred this benefit was Interstate Industrial Corporation ("Interstate"), which paid the balance of the renovation costs; and (c) Mr. Kerik accepted the renovations with the agreement or understanding that, in exchange for the payments, Mr. Kerik would attempt to influence the New York City Trade Waste Commission ("TWC") on behalf of Interstate, in connection with a pending license application.

B. Any Charges Would Be Barred by the Statute of Limitations

Under New York criminal law, the applicable statute of limitations provision is Criminal Procedure Law ("CPL") § 30.10. It provides that the limitations period for all felonies (other than Class A felonies, which are not relevant here) is five years and for all misdemeanors is two years. Accordingly, in the absence of any tolling provisions, any prosecution of Mr. Kerik would be time barred.

1. Any Tolling Ended in August 2000

Subdivision three of CPL § 30.10 contains a tolling provision relating to public officials:

> A prosecution for any offense involving misconduct in public office by a public servant may be commenced at any time during the defendant's service in such office or within five years after the termination of such service; provided however, that in no event shall the period of limitation be extended by more than five years beyond the period otherwise applicable under subdivision two.

Under a plain reading of the statute, tolling applies only while an individual remains in the public office where the alleged offense took place. The statute cannot be read to extend tolling into any period during which an individual serves in any public office, without respect to when the alleged offense took place.

The statute specifically refers to any offense committed in "public office." In particular, the statute expressly limits the tolling to "any time during the defendant's service in such office or within five years after the termination of such service." CPL § 30.10(3)(b) (emphasis supplied). The statute does not extend tolling during the defendant's service in "any" office. The general terms "such office" and "such service" must be read as referring back to the specific language in the preceding clause, i.e., the specific office in which the offense took place. See People v. Aarons, 759 N.Y.S.2d 20, 26 (1st Dep't 2003) (noting that under "the rule of ejusdem generis . . . a general statutory term should be understood in light of the specific terms which surround it"). In Aarons, for example, the court considered a provision of the CPL that required

at least twelve grand jurors to concur in the "finding of an indictment, a direction to file a prosecutor's information, [or] a decision to submit a grand jury's report and every other affirmative official action or decision." Id. at 25. The court held that the general clause "every other affirmative official action" was modified by the more specific preceding terms, so that every affirmative official action of the grand jury was subject to the twelve-vote requirement. Id. This principle of construction applies here with equal force.

While we believe that the plain language of the tolling provision is unambiguous, it is well-settled law that courts will construe any ambiguity in a limitations provision in favor of the defendant. See Toussie v. United States, 397 U.S. 112, 860 (1970). As such, any tolling of the limitations period ceased when Mr. Kerik left the position of Commissioner of Corrections in August 2000. The limitations period on the contemplated bribery charge, therefore, would have run in August 2005.

2. Post-August 2000 Conduct Cannot Extend the Limitations Period

It has been suggested that your office has evidence that post-dates Mr. Kerik's tenure as Commissioner of Corrections, and presumably extends into the period during which he served as Police Commissioner. Any such evidence, however, could not operate to toll the limitations period during Mr. Kerik's tenure as Police Commissioner.

It is clear that any bribery offense, even if proven, would have been complete by August 2000, when Mr. Kerik left the position of Commissioner of Corrections and became Police Commissioner. Mr. Ray was indicted on unrelated federal securities charges on March 1, 2000, and shortly thereafter the TWC suspended Interstate's contracts with New York City and launched an investigation of Interstate. Plainly, at least as of this point, Mr. Kerik could no longer be said to be attempting to influence the TWC in connection with the license application. In any event, we understand that the alleged corrupt payments -- the renovations to Mr. Kerik's Bronx apartment -- were completed during his tenure as Commissioner of Corrections.

As such, the offense, even if proven, would have been complete prior to the end of Mr. Kerik's tenure as Commissioner of Corrections. See 12 AmJur 2d Bribery § 9 (August 2005) ("[T]he crime of bribery is complete upon the formation of an agreement or understanding or upon the offering or promising the tender of something of value."). Because, as explained above, the tolling provision applies only to offenses committed while the defendant is in a particular office and extends only as long as the defendant serves in "such office," any evidence of any conduct during Mr. Kerik's tenure as Police Commissioner could not extend the tolling of the limitations period on the contemplated bribery charge.

Even evidence of obstructive conduct or conduct intended to conceal the underlying conduct would not serve to extend the limitations period. Indeed, the Supreme Court has held that even subsequent steps to conceal a conspiracy cannot be relied upon to extend the limitations period with respect to a conspiracy. Grunewald v. United States, 353 U.S. 391, 402 (1957). As the Court explained in Grunewald:

> Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases.

Id. at 402. Here, we understand that your office is considering only a substantive charge, a theory even narrower than a conspiracy charge. The rationale of Grunewald applies with greater weight to the proposed bribery charge, and it would preclude any reliance on any attempts at obstruction or concealment to extend the limitations period.

C. The Requisite Agreement or Understanding Cannot Be Proven

We also submit that, on the merits, the People cannot satisfy the central element of a bribery charge – namely, a corrupt agreement. Without conceding any of the allegations described herein, we believe that the facts, even if proven, would be legally insufficient to sustain a conviction on the contemplated charge.

The core element of the crime of bribery is the "agreement or understanding" between the bribe giver and receiver, and the Court of Appeals has held that the "agreement or understanding" must be more than a mere "hope" to influence. People v. Bac Tran, 80 N.Y.2d 170, 177 (1992). In Bac Tran, the court overturned the conviction of the fire safety director for two hotels who offered cash to a city fire inspector and an investigator posing as an inspector. The trial court had instructed the jury that "the defendant's hope that the benefit bestowed would induce a forbidden favor" was sufficient to establish agreement or an understanding. Id. The Court of Appeals held that this instruction failed to convey the substance of the necessary "agreement or understanding," and it noted that "[a] mere 'hope' and a statutory 'understanding', in common parlance and in criminal jurisprudence, are miles apart." Id.

For this reason, the bargained-for official act "must be something real, substantial and of value to the alleged recipients, as distinguished from something imaginary, illusive or amounting to nothing more than the gratification of a wish or hope." People v. Dolan, 576 N.Y.S.2d 901, 904 (3d Dep't 1991) (citation omitted). Unless the official act confers a concrete benefit, it cannot form the basis for a bribery charge. In Dolan, for example, the court overturned the conviction of a city police chief who had allegedly reached a quid pro quo agreement in which the county sheriff would agree to suspend drug investigations within the confines of the city. The People argued that the sheriff's agreement to suspend such investigations constituted a benefit to the defendant because the defendant feared that an investigation would uncover his own and his friends' drug use. On appeal, however, the court held that because a police

official's allocation of police resources is a matter of discretion, the sheriff's agreement to suspend narcotics investigations was not a sufficiently concrete benefit to the defendant. The defendant's hope to divert an investigation that could reveal his own misconduct was only an "illusive corrupt desire" that could not "render an otherwise valid, discretionary agreement corrupt." Id. (citation omitted). See also People v. Canepa, 745 N.Y.S.2d 153, 154 (1st Dep't 2002) (People failed to prove "agreement" or "understanding" between attorney who hired court clerk as a paralegal even where clerk subsequently expedited some of attorney's matrimonial cases; clerk frequently expedited cases for attorneys as a matter of course, and benefit was not one particularly conferred upon the defendant).

Under these standards, the evidence in this case would be insufficient to establish the requisite corrupt agreement or understanding. First, the alleged benefit that Interstate was to receive was illusory. The decision to grant any licenses or to take any other action with respect to Interstate rested within the discretion of the TWC. That agency had its own investigative staff and legal staff that alone had competence to decide, in its discretion, what action, if any, to take with respect to Interstate. Even if the People could establish an "agreement or understanding" that Mr. Kerik would attempt to influence the TWC, such an agreement would be insufficient to establish the requisite element under the bribery statute. See Bac Tran, 80 N.Y.2d at 177; Dolan, 576 N.Y.S.2d at 904; Canepa, 745 N.Y.S.2d at 154.

Second, even if these legal deficiencies could be overcome, the timing of the alleged official actions by Mr. Kerik and his receipt of the alleged benefit undermines any theory of an agreement or understanding that these two elements were linked. Perhaps the strongest evidence on this issue is the complete absence of any proof that the TWC was influenced with regard to Interstate. By March 2000, the TWC had suspended Interstate's city contracts, and state officials in New Jersey were already investigating the matter. Indeed, by September 2000, the matter was widely reported in the news media.

D. The Requisite Corrupt State of Mind Element Cannot Be Proven

The Court of Appeals has held that "[b]efore a public servant may be convicted of bribe receiving, second degree, there must be proof of a corrupt agreement." People v. Alvino, 71 N.Y.2d 233, 244 (1987) (emphasis supplied). As such, "[t]he People must establish that defendant solicited, accepted or agreed to accept a benefit 'upon an agreement or understanding' that his conduct would be influenced by the benefit." Id. (quoting N.Y. Penal Law former § 200.10). Thus, mere proof of payment of a benefit and an official act is insufficient. Rather, the People must establish "the doing of one in exchange for the other." Id.

The Court of Appeals made clear in Bac Tran that the essence of bribe payment or receiving is an agreement or understanding for the public official to be influenced to act corruptly. As explained above, the court in Bac Tran overturned the conviction of the fire safety director for two hotels who offered cash to a city fire inspector and an investigator posing as an inspector. The court noted that, at a minimum, the requisite "understanding" under the various bribery statutes required proof that the bribe maker understood "that the bribe receiver would

effectuate the proscribed corruption of public process and was affected to do so by the actus reus of the particular crime." Id. at 177 (emphasis supplied). The court held that the People had failed to meet this burden. Id.

Although Bac Tran involved a charge of bribe giving, the Court of Appeals noted that the same reasoning applies to the crime of bribe receiving. Id. Indeed, the court cited another one of its cases, People v. Harper, 75 N.Y.2d 313 (1990), in which the court held that the People had failed to prove the requisite "understanding" under the identical language of the bribe receiving by a witness statute, Penal Law § 215.05. There, even though the defendant had agreed to "drop charges" against his assailant in exchange for money, the court held that the People had failed to prove that the defendant had received the money with the "understanding" that he would testify falsely if the prosecutor brought charges and called the defendant as a witness. Id. at 318. The court noted that "[t]he gist of the crime is not the payment of money, but rather the 'agreement or understanding' under which a witness accepts or agrees to accept a benefit." Id. at 317.

The corrupt purpose requirement is of central importance in light of the Supreme Court's ground-breaking decision in Arthur Andersen v. United States, 125 S.Ct. 2129 (2005), in which the Court set a high bar for any charge founded upon a defendant's purported intent to impede or influence an investigation Although the case involved the interpretation of a federal criminal statute, the Court's construction of the requirement of a "corrupt" intent was grounded upon due process concerns about avoiding the criminalization of innocent conduct.

The case arose when, following news reports about accounting improprieties at Enron, for whom Arthur Andersen had acted as auditor, senior personnel at the firm instructed employees to comply with the firm's document retention policy and thereby destroy Enron-related documents, even after the Securities and Exchange Commission had opened an investigation. Id. at 2133. The firm was subsequently charged with obstruction of justice and was convicted. Id. at 2134.

On appeal, however, the Supreme Court reversed the conviction. The trial court had instructed the jury that Arthur Andersen could be convicted if the firm had intended to "subvert, undermine, or impede" the government's investigation. The Supreme Court held that the mere intent to "impede" an investigation is not inherently illegal. The Court noted, for example, that under the dictionary definition of the word "impede" ("to interfere with or get in the way of progress of" or "hold up" or "detract from"), "anyone who innocently persuades another to withhold information from the Government" impedes an investigation without committing unlawful conduct. Id. at 2136. The Court cited other examples of those who innocently impede an investigation, such as "a mother who suggests to her son that he invoke his right against compelled self-incrimination . . . or a wife who persuades her husband not to disclose marital confidences." Id. at 2134-35 (citations omitted).

To ensure that a charge founded upon an intent to impede an investigation did not capture innocent conduct, the trial court should have instructed the jury that the firm had to have acted corruptly, meaning with a "wrongful, immoral, depraved, or evil" purpose. Id. at 2136. Because

the trial court's instructions failed to convey this basic sense of immoral purpose, the Supreme Court overturned the conviction. Id. at 2137.

Arthur Andersen has particular significance in this case because, as we understand it, the service that Mr. Kerik allegedly agreed to perform was to attempt to "influence" the TWC with regard to licensing issues on behalf of Interstate. If anything, an attempt to influence ("to affect or alter by indirect or intangible means" or "to have an effect on the condition or development of") (see Merriam Webster Online Dictionary) a licensing decision is more innocuous than an intent to impede a regulatory enforcement investigation. This means that to satisfy the corrupt agreement element in this case, the People would be required to prove beyond a reasonable doubt that Mr. Kerik agreed to attempt to influence the TWC on Interstate's behalf with a "wrongful, immoral, depraved or evil" purpose. This, in turn, would require proof that, at a minimum, Mr. Kerik intended to cause the TWC to bestow a license, or to afford Interstate some benefit, that it otherwise should not have bestown upon Interstate. We do not believe that the evidence would come close to satisfying this high burden.

E. Proposed Civil Resolution

In light of the legal and factual infirmities in any contemplated prosecution of Mr. Kerik, we propose the following resolution, pursuant to which Mr. Kerik would:

- enter into a non-prosecution agreement with your office;
- agree to a simultaneous settlement with the Conflicts of Interest Board of the City of New York of a violation of the conflict of interest provisions of the New York City Charter, pursuant to which he would agree to pay a substantial fine;
- disgorge through an acceptable means (e.g., forfeiture) the unpaid value of the renovations on his former Bronx apartment; and
- appear in court to (1) waive the statute of limitations relating to the violation, (2) acknowledge having committed the violation, and (3) read an agreed-upon allocution admitting the specific offending conduct.

The particular conflict of interest provision to which Mr. Kerik would agree to settle is the following:

> No public servant shall accept any valuable gift, as defined by rule of the board, from any person or firm which such public servant knows is or intends to become engaged in business dealings with the city . . . NYC Charter § 2604(b)(2).

Hon. Robert Johnson
May 12, 2006
Page 8

We believe that this settlement would most serve the ends of justice.

Very truly yours,

______________________________
Kenneth M. Breen
Fulbright & Jaworski L.L.P.

______________________________
Joseph Tacopina
Law Offices of Joseph Tacopina, P.C.

cc: Thomas Leahy, Esq.

31124722.1