UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BERNARD B. KERIK,

                *Plaintiff,*                        14-cv-02374 (JGK)

    -- against--

JOSEPH TACOPINA, ESQ.,

                *Defendant.*
--------------------------------------------------------X

## DEFENDANT JOSEPH TACOPINA'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
Tel: 212-974-2400
Fax: 212-974-2944

*Attorneys for Defendant Joseph Tacopina*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

THE PROCEDURAL REQUIREMENTS FOR
THIS MOTION HAVE BEEN MET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II

MR. TSIMPEDES SHOULD BE SANCTIONED BECAUSE
THE COMPLAINT'S LEGAL CLAIMS ARE FRIVOLOUS . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT III

BOTH MR. KERIK AND MR. TSIMPEDES SHOULD BE
SANCTIONED FOR FRIVOLOUS FACTUAL ALLEGATIONS
SET FORTH IN THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT IV

DETERMINATION OF THE SANCTION
TO BE IMPOSED IS PREMATURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>CASES</u>

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  09 CIV. 2227 (PAC), 2013 WL 1746062 (S.D.N.Y. Apr. 23, 2013) . . . . . . . . . . . . . . . 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Calcutti v. SBU, Inc.,*
  224 F.Supp.2d 691 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.,*
  854 F.2d 1452 (2d Cir. 1988) *rev'd in part on other grounds sub nom.*
  *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) . . . . . . . . . . . . . . . . 13

*Carl v. Cohen,*
  55 A.D.3d 478 (1st Dep't 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cohen v. Kachroo,*
  115 A.D.3d 512 (1st Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gottlieb v. Heller,*
  93 CIV. 3081 (LAP), 1994 WL 557092 (S.D.N.Y. Oct. 7, 1994) . . . . . . . . . . . . . . . . 13

*Hennessy v. Cement & Concrete Worker's Union Local 18A*
*of Laborer's Int'l Union of N. Am., AFL-CIO,*
  963 F. Supp. 334 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
  12 N.Y.3d 132 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Parikh,*
  _____ B.R. _____, AP 808-8062-REG,
  2014 WL 1567391 (Bankr. E.D.N.Y. Apr. 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jiau v. Hendon,*
  12 CIV. 7335 (PAE), 2014 WL 559004 (S.D.N.Y. February 12, 2014) . . . . . . . . . . . . 7

*Joyce v. Thompson Wigdor & Gilly LLP,*
  06 CIV. 15315 (RLC)(GWG), 2008 WL 2329227 (S.D.N.Y. June 3, 2008) . . . . . . . . 10

*JP Morgan Chase v. J.H. Elec. Of New York*,
    69 A.D.3d 802 (2d Dep't 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kerik v. Tacopina*,
    CIV. 14-488 (FSH), 2014 WL 1340038 (D.N.J. Apr. 3, 2014) . . . . . . . . . . . . . . . . . . . . 1

*Kurman v. Schnapp*,
    73 A.D.3d 435 (1st Dep't 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Malkin v. Cont'l Cas. Co.*,
    CIV.A.06-1103 (JLL), 2010 WL 563066 (D.N.J. Feb. 16, 2010) . . . . . . . . . . . . . . . . . . 5

*Matana v. Merkin*,
    957 F.Supp.2d 473 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Neuman v. Frank*,
    82 A.D.3d 1642 (4th Dep't 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Poux v. County of Suffolk*,
    09 CV 3081 (SJF)(WDW), 2010 WL 1849279 (E.D.N.Y. May 4, 2010) . . . . . . . . . . . 11

*Shumsky v. Eisenstein*,
    96 N.Y.2d 164 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Star Mark Mgmt.*, Inc. *v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    682 F.3d 170 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    07 CV 3208 (KAM) (SMG), 2010 WL 4878955 (E.D.N.Y. Nov. 23, 2010),
    *aff'd*, 682 F.3d 170 (2nd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stylianou v. St. Luke's/Roosevelt Hosp. Ctr.*,
    902 F. Supp. 54 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United Parcel Serv., Inc. v. Lexington Ins. Co.*,
    12 CIV. 7961 (SAS), 2014 WL 705270 (S.D.N.Y. Feb. 21, 2014) . . . . . . . . . . . . . . . . 6

*Wolfson v. Bruno*,
    844 F.Supp.2d 348 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

<u>STATUTES</u>

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## DEFENDANT JOSEPH TACOPINA'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Defendant Joseph Tacopina, Esq. submits this Memorandum of Law in support of his motion for an award of sanctions, pursuant to Fed. R. Civ. P. 11, against Plaintiff Bernard B. Kerik and his counsel, Athan Tsimpedes, Esq.

### STATEMENT OF THE FACTS

The facts relevant to the determination of this motion are apparent from the face of the Complaint (Exhibit A to the Declaration of Judd Burstein). In addition, other facts relevant to the procedural history of this case and the conditions precedent for bringing this motion are also set forth in Mr. Burstein's Declaration ("Burstein Dec.").

In essence, the plaintiff in this case, a convicted felon, has brought a frivolous and necessarily time-barred malpractice action against his former attorney, Joseph Tacopina, arising from Mr. Tacopina's representation of Plaintiff in connection with Plaintiff's 2006 misdemeanor guilty plea in the Supreme Court of the State of New York, Bronx County ("Bronx Case"). In addition, Plaintiff alleges misconduct by Defendant in connection with Defendant's criminal case in this Court, *United States v. Kerik*, No. S1 07 Cr. 1027 (SCR) (S.D.N.Y.) ("SDNY Case"). In 2009, Mr. Kerik pleaded guilty in the SDNY Case.

In January of 2014, Mr. Kerik commenced this action in the United States District Court for the District of New Jersey. On April 3, 2014, by Order of the Honorable Faith S. Hochberg ("April Order"), the case was transferred to this Court. *Kerik v. Tacopina*, CIV. 14-488 (FSH), 2014 WL 1340038 (D.N.J. Apr. 3, 2014) (Docket No. 20).

The great bulk of this motion is addressed to the conduct of Plaintiff's counsel because the Complaint's claims are frivolous in light of the governing law.   However, sanctions are also sought against Mr. Kerik with respect to factual allegations which he unquestionably knows are false.

**ARGUMENT**

**POINT I**

**THE PROCEDURAL REQUIREMENTS FOR THIS MOTION HAVE BEEN MET**

Fed. R. Civ. P. 11(c)(2) provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.   If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Here, Mr. Tacopina has met Rule 11(c)(2)'s procedural requirements in that, on April 14, 2014, he served Mr. Tsimpedes, by Federal Express (*see* Local Rule 5.3), with a Notice of Motion for sanctions accompanied by an explanatory letter citing pertinent legal authority and setting forth in detail the basis for his sanctions motion.  (Exhibit B to Burstein Dec.)

The Second Circuit expressly approved this procedure in *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012):

> Koon Chun's counsel sent Li a letter requesting that Star Mark withdraw the complaint and threatening to file a Rule 11 motion.  Attached to the letter was a proposed Rule 11 notice of motion, which listed six grounds for Koon Chun's assertion that the lawsuit was frivolous.  Although the notice of motion referred to a memorandum of law and two affidavits, no such documents were attached to the notice of motion.  The letter, however, contained citations to legal authorities.

\* \* \*

2

An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe harbor period.

Here, however, Koon Chun did more than send a Rule 11 letter—it attached to its letter a copy of its notice of motion for sanctions. After waiting the requisite 21 days, Koon Chun filed its sanctions motion—which included as grounds for Rule 11 sanctions several of those listed in the earlier notice—with the district court. Li nonetheless argues that Koon Chun failed to comply with the procedural requirements of Rule 11(c)(2) because it failed to serve a "formal fully supported motion," Appellant's Br. at 21, *i.e.*, without "any supporting legal and factual materials," Appellant's Reply Br. at 1.

We hold, in the circumstances here, that Koon Chun met the procedural requirements of the safe harbor provision of Rule 11(c)(2) by serving its notice of motion for Rule 11 sanctions with its January 9, 2008, letter, even though it did not serve at that time supporting affidavits or a memorandum of law.

682 F.3d at 174-176 (citations omitted).

In the more than 21 days that have passed since April 14, neither Mr. Tsimpedes nor his client have taken advantage of Rule 11's safe harbor provision.

## POINT II

## MR. TSIMPEDES SHOULD BE SANCTIONED BECAUSE THE COMPLAINT'S LEGAL CLAIMS ARE FRIVOLOUS

Fed. R. Civ. P. 11(c) authorizes an award of sanctions against an attorney where he or she violates Rule 11(b)(2) by filing a complaint with claims that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." "Rule 11 sanctions are judged under an objective reasonableness standard and are appropriate only when it is patently clear that a pleading has no chance of success." *Hennessy v. Cement & Concrete Worker's Union Local 18A of Laborer's Int'l Union of N. Am., AFL-CIO*, 963 F. Supp. 334, 339 (S.D.N.Y. 1997). As we now proceed to show, all of Plaintiff's claims meet this test.

3

## THE GOVERNING LAW

Before turning to each Claim for Relief, we note that the Complaint, originally filed in New Jersey, purports to assert claims under New Jersey law. However, Plaintiff's contention that New Jersey law governs here is itself frivolous. New York law unquestionably applies in this case because Mr. Tacopina is licensed to practice law in New York (and not New Jersey)[1] and, as Judge Hochberg found **in this very** case, "the essential conduct underlying Kerik's claims occurred in New York, not New Jersey." (April Order, 2014 WL 1340038, at \*6.) This being so, and especially since Mr. Kerik is now collaterally estopped on the locale of Mr. Tacopina's alleged misconduct, New York law unquestionably applies to this case:

> "In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law." *Santoro v. Donnelly,* 340 F.Supp.2d 464, 484 (S.D.N.Y.2004) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *accord, e.g., Krauss v. Manhattan Life Ins. Co.,* 643 F.2d 98, 100 (2d Cir.1981). "New York courts have adopted a flexible choice of law approach and 'seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'" *White Plains Coat & Apron Co. v. Cintas Corp.,* 460 F.3d 281, 284 (2d Cir.2006); *accord, e.g., Arakelian v. Omnicare, Inc.,* 735 F.Supp.2d 22, 38 (S.D.N.Y.2010); *Moltner v. Starbucks Coffee Co.,* 08 Civ. 9257, 2009 WL 3573190 at \*1 (S.D.N.Y. Oct. 23, 2009), *aff'd,* 624 F.3d 34 (2d Cir.2010).
>
> New York has the greatest interest in this litigation because (1) Bruno is licensed to practice in New York, and (2) the overarching goal of the second representation agreement was to minimize Wolfsori's sentence before Judge Koeltl, which was to occur in New York. *See, e.g., Wolfson v. Moskowitz,* 08 Civ, 8796, 2009 WL 1515674 at \*2, \*4–5 (S.D.N.Y. June 1, 2009) ("In a legal malpractice case, New York's interest is predominant when the attorney being sued is licensed in New York ...." (citing cases)); *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 335 (S.D.N.Y.2005) ("A state has a paramount interest in regulating the conduct of attorneys licensed to practice within its borders."), *aff'd in part, vacated in part, sub nom. Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir.2006); *Seippel v. Jenkens & Gilchrist. P.C.,* 341 F.Supp.2d 363, 380 (S.D.N.Y.2004) ("New York's interest in

---

[1]     *See* Exhibit C to Burstein Dec.

4

> regulating the conduct of its attorneys gives it the predominant interest in this matter" for rescission of an excessive fee arrangement,); *Diversified Group, Inc. v. Daugerdas,* 139 F.Supp.2d 445, 452–53 (S.D.N.Y.2001) (applying New York's interests analysis and holding that a "state has a paramount interest in regulating the conduct of attorneys licenced [*sic*]to practice within its borders"); *LNC Invs., Inc. v. First Fidelity Bank, N.A.,* 935 F.Supp. 133, 135-51 (S.D.N.Y. 1996 (malpractice claim against New York attorney is governed by New York law, applying New York's interests analysis); *Shaklee Corp. v. Oberman,* 91 Civ. 6870, 1993 WL 378268 at *1 (S.D.N.Y. Sept. 20, 1993) ("New York has the predominant interest in issues involving legal malpractice allegedly committed by a New York attorney....").

*Wolfson v. Bruno,* 844 F.Supp.2d 348, 355 (S.D.N.Y. 2011) (Peck, M.J. deciding case pursuant to parties' consent); *see also Malkin v. Cont'l Cas. Co.,* CIV.A.06-1103 (JLL), 2010 WL 563066 (D.N.J. Feb. 16, 2010) (finding that New York law applied to malpractice case where, *inter alia,* the attorneys were licensed in New York and New York was the State where the malpractice allegedly occurred).

In light of the authority cited above, any claim asserted under New Jersey law is necessarily frivolous.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF

Plaintiff's First Claim for Relief seeks damages for "Negligence" arising from Mr. Tacopina's representation of Mr. Kerik. This claim is frivolous because the Complaint's Second Claim for relief seeks identical damages under a legal malpractice theory. "Under New York law, where claims of negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, or fraudulent misrepresentation are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed." *Joyce v. Thompson Wigdor & Gilly LLP,* 06 CIV. 15315 (RLC)(GWG), 2008 WL 2329227, at *14 (S.D.N.Y. June 3, 2008) (Gorenstein, M.J.).

In addition, this claim is frivolous because it seeks attorneys' fees, which are not recoverable under New York law "'unless authorized by agreement between the parties, statute, or court rule.'" *United Parcel Serv., Inc. v. Lexington Ins. Co.*, 12 CIV. 7961 (SAS), 2014 WL 705270, at *1 (S.D.N.Y. Feb. 21, 2014) (Scheindlin, D.J.).

Accordingly, the Complaint's First Cause of Action is frivolous under Rule 11.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

Plaintiff's Second Claim for Relief seeks damages for "Legal Malpractice." This claim is frivolous for two reasons.

**First**, the claim is barred by CPLR 214(6), which provides for a three year statute of limitations for legal malpractice claims. The claim accrues "when the malpractice is committed." *Calcutti v. SBU, Inc.*, 224 F.Supp.2d 691, 699 (S.D.N.Y. 2002) (Marrero, D.J.). Here, the Complaint alleges that the gravamen of Mr. Tacopina's malpractice was his advising Mr. Kerik to plead guilty to charges in the Bronx Case on June 30, 2006. Thus, this action, commenced on January 23, 2014 – seven and one-half years after the alleged malpractice, was time-barred as of June 30, 2009. Moreover, even erroneously assuming the applicability of the "continuous representation rule," *see Shumsky v. Eisenstein*, 96 N.Y.2d 164, 167-68 (2001), by reason of Mr. Tacopina having briefly represented Mr. Kerik in the ensuing federal investigation that led to the SDNY Case, the claim would still be time-barred because Paragraphs 31-33 of the Complaint allege that Mr. Tacopina's representation of Mr. Kerik ended in March of 2007. Hence, even if Mr. Kerik is accorded the benefit of the "continuous representation" rule, his malpractice claim was time-barred as of March 2010, approximately four years before the Complaint was filed. The law is of course clear that an attorney cannot commit malpractice when he is no longer representing a client. *See Neuman v.*

6

*Frank*, 82 A.D.3d 1642, 1643 (4th Dep't 2011) ("'A cause of action for legal malpractice must be

based on 'the existence of an attorney-client relationship at the time of the alleged malpractice....'")

(Citation omitted).

**Second**, Mr. Kerik's malpractice claim is barred by the fact that his criminal convictions have

never been overturned:

> "To raise a legal malpractice claim in New York, arising from a criminal proceeding,
> the 'plaintiff must allege his innocence or a colorable claim of innocence of the
> underlying offense, for so long as the determination of his guilt of that offense
> remains undisturbed, no cause of action will lie.'" *Klein v. Talkin, Muccigrosso &*
> *Roberts, L.L.P.*, 415 F. App'x 288, 289 (2d Cir.2011) (quoting *Carmel v. Lunney*, 70
> N.Y.2d 169, 173 (1987)). "[I]n order to 'open the door for even a colorable claim of
> innocence, criminal defendants must free themselves of the conviction, for the
> conviction precludes those potential plaintiffs from asserting innocence in a civil
> suit.'" *Sash v. Schwartz*, 356 F. App'x 555, 556 (2d Cir.2009) (quoting *Britt v. Legal*
> *Aid Soc., Inc.*, 95 N.Y.2d 443, 447 (2000)).

*Jiau v. Hendon*, 12 CIV. 7335 (PAE), 2014 WL 559004, at *6 (S.D.N.Y. February 12, 2014)

(Engelmayer, D.J.).

In addition, this claim is frivolous because it seeks attorneys' fees, which are not recoverable

under New York law "'unless authorized by agreement between the parties, statute, or court rule.'"

*United Parcel*, 2014 WL 705270, at *1.

For these reasons, maintaining the Complaint's Second Cause of Action is frivolous under

Rule 11.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF

The Complaint's Third Claim for Relief seeks damages for an alleged breach of fiduciary

duty. To the extent that this claim is based upon alleged conduct by Mr. Tacopina during the period

that he represented Mr. Kerik, the claim is frivolous because it is duplicative of Mr. Kerik's

malpractice claim. *See Cohen v. Kachroo*, 115 A.D.3d 512, 512 (1st Dep't 2014). ("Plaintiff's cause of action alleging breach of fiduciary duty is dismissed as duplicative of the legal malpractice cause of action.").

That being said, we recognize that one can maintain a breach of fiduciary duty claim against a lawyer for conduct that takes place **after** his representation of the client ends so long as it is premised upon "separate facts that support a different theory." *Kurman v. Schnapp*, 73 A.D.3d 435, 435 (1st Dep't 2010). That exception provides no comfort to Mr. Tsimpedes here because, viewing the Complaint far more generously than is warranted, Plaintiff's breach of fiduciary duty claim accrued in 2007, more than six years prior to the filing of the Complaint in this action, and is therefore barred. *See Matana v. Merkin*, 957 F.Supp.2d 473, 492 (S.D.N.Y. 2013) (Engelmayer, D.J.).[2]

Under New York law, a breach of fiduciary duty claim accrues as soon as "'the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint.' As with other torts in which damage is an essential element, the claim 'is not enforceable until damages are sustained....'" *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (citation omitted). The allegations in the Complaint, together with the Docket of the SDNY Case (Exhibit D to Burstein Dec.), conclusively establish that Plaintiff's breach of fiduciary duty claim accrued no later than sometime in late 2007, more than six years prior to the filing of the Complaint in this case:

---

[2]    We note that the limitations period for Plaintiff's breach of fiduciary duty claim is likely three years because his fraud claim in this case is also frivolous. *Matana*, 957 F.Supp.2d at 492. However, we have chosen to use the six year statute of limitations that might arguably apply.

a.    The gravamen of Plaintiff's breach of fiduciary duty claim is that Mr. Tacopina breached his fiduciary duty to Mr. Kerik as a former client by disclosing confidential and privileged information to the Government **after** Mr. Tacopina had ceased representing Mr. Kerik.

b.    According to Paragraph 51 of the Complaint, Mr. Tacopina's supposed breach of fiduciary duty occurred prior to December 6, 2007: "On or about December 6, 2007, it was revealed that Mr. Tacopina had met with federal prosecutors in secret, and divulged Mr. Kerik's alleged conversations with him related to the Bronx Case that are considered privileged or non binding [*sic*] under the law."[3]

c.    That then leaves the issue of when Mr. Kerik first suffered damages from Mr. Tacopina's supposed breach.  Paragraphs 61-62 of the Complaint allege that Mr. Kerik first incurred damages sometime after January 23, 2008, when Mr. Kerik's counsel, Kenneth Breen, Esq., was disqualified by Judge Robinson based on statements made by Mr. Tacopina to the prosecutors in the SDNY Case, thereby requiring Mr. Kerik to incur legal fees with new counsel.

d.    If the Complaint's allegations as to the first date on which damages were suffered were accurate, Mr. Kerik's breach of fiduciary duty claim would be timely. However, the docket from the SDNY Case conclusively shows that if there were damages, they were first incurred in November of 2007, when Mr. Kerik was indicted because of, at least in part, Mr. Tacopina's alleged breach of fiduciary duty.

---

[3]    As discussed *infra*, at p. 16, this factual allegation is itself demonstrably sanctionable because there is a decision by Judge Robinson in the SDNY Case (Exhibit E to the Burstein Dec.) that explicitly holds to the contrary.

9

e.   Alternatively, even if one grants Plaintiff's contention that the damages from Mr.

Tacopina's alleged breach of fiduciary duty only commenced in connection with the

disqualification of Mr. Breen, then this claim accrued no later than sometime prior

to December 7, 2007, when Mr. Kerik was forced to incur fees as a result of the

opposition to the motion to disqualify that was filed by Mr. Breen on December 7,

2007.

Accordingly, given the allegations of the Complaint and the indisputable public record,

Plaintiff's Third Claim for Relief is also frivolous under Rule 11.

## PLAINTIFF'S FOURTH CLAIM FOR RELIEF

The Complaint's Fourth Claim for Relief seeks damages for "Negligent Misrepresentation."

This claim is also frivolous because it is duplicative of Mr. Kerik's malpractice claim. *See Joyce*,

2008 WL 2329227, at *14 . In addition, the claim is frivolous because it seeks attorneys' fees, which

are not recoverable under New York law "'unless authorized by agreement between the parties,

statute, or court rule.'" *United Parcel*, 2014 WL 705270, at *1.  It too is sanctionable under Rule 11.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF

The Complaint's Fifth Claim for Relief, seeking punitive damages, is frivolous because,

under New York law, "punitive damages may not be sought as a separate cause of action." *Stylianou

v. St. Luke's/Roosevelt Hosp. Ctr.*, 902 F. Supp. 54, 59 (S.D.N.Y. 1995) (Koeltl, D.J.).

## PLAINTIFF'S SIXTH CLAIM FOR RELIEF

The biggest problem with the Complaint's Sixth Claim for Relief is that it is

incomprehensible. However, that in itself is not a ground for sanctions. But the claim is nonetheless

frivolous because it is nothing more than a jumbled rehashing of Mr. Kerik's malpractice and breach

of fiduciary duty claims, both of which we have shown to be frivolous in our discussions of the Complaint's First and Third Causes of Action.

Moreover, the fact that this Claim for Relief purportedly alleges a conspiracy does not extend the statute of limitations.  The claim is still time-barred because the Complaint fails to allege any affirmative act by Mr. Tacopina that damaged Mr. Kerik after 2007.  *See Poux v. County of Suffolk*, 09 CV 3081 (SJF)(WDW), 2010 WL 1849279, at *8 (E.D.N.Y. May 4, 2010) ("For claims alleging civil conspiracies…, 'the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages.'").

## PLAINTIFF'S SEVENTH CLAIM FOR RELIEF

Mr. Kerik's Seventh Claim for relief, seeking punitive damages, is frivolous for the same reason that his Fifth Claim for Relief is frivolous, *i.e.*, that punitive damages may not be sought as a separate cause of action under New York law, *see Stylianou*, 902 F. Supp. at 59.

## PLAINTIFF'S EIGHTH CLAIM FOR RELIEF

The Complaint's Eighth Claim for Relief alleges a breach of contract with respect to Mr. Kerik's alleged deal with Raffaello Follieri.  This claim is frivolous because all of the conduct alleged by Mr. Kerik took place more than six years prior to the filing of the Complaint in January of 2014. (*See* Complaint at ¶¶ 44-46.)  It is therefore time-barred under CPLR 213(2).  In addition, the Complaint fails to allege, nor could it, that Mr. Tacopina ever received any monies from Mr. Follieri.  As such, the Complaint's Eighth Claim for Relief has frivolously alleged a breach of contract claim that could never be established because Mr. Kerik never suffered any damages – an essential element of a breach of contract claim. *See JP Morgan Chase v. J.H. Elec. Of New York*, 69 A.D.3d 802, 803 (2d Dep't 2010).

Nor is it sufficient, as is the case with this Claim for Relief, merely to state that a plaintiff has been damaged. Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## PLAINTIFF'S NINTH CLAIM FOR RELIEF

Mr. Kerik's Ninth Claim for Relief, seeking damages for "Intentional Misrepresentation" is also frivolous.

**First**, to the extent that the claim arises from statements made to Mr. Kerik in connection with Mr. Tacopina's representation of Mr. Kerik, it is duplicative of Mr. Kerik's malpractice claim. *See Carl v. Cohen*, 55 A.D.3d 478, 478-79 (1st Dep't 2008).

**Second**, the Complaint does not come close to meeting the pleading requirements of Fed. R. Civ. P. 9(b).

Hence, this Claim for Relief is also frivolous under Rule 11.

## PLAINTIFF'S TENTH CLAIM FOR RELIEF

The Complaint's Tenth Claim for Relief alleges that Mr. Tacopina fraudulently induced Mr. Kerik into pleading guilty to charges in the Supreme Court, Bronx County. This claim is frivolous and must be withdrawn because, as explained above, it is duplicative of Mr. Kerik's malpractice claim. Moreover, it is inconceivable that any responsible lawyer taking into account his Rule 11 obligations could believe that a 2014 claim based upon a 2006 guilty plea and a termination of Mr. Tacopina's representation in 2007, might survive a statute of limitations defense.

12

## POINT III

## BOTH MR. KERIK AND MR. TSIMPEDES SHOULD BE SANCTIONED FOR FRIVOLOUS FACTUAL ALLEGATIONS SET FORTH IN THE COMPLAINT

Rule 11 sanctions may be imposed against both a party and his attorney where a complaint's "factual contentions [do not] have evidentiary support or, if specifically so identified, will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The law is clear that "where the party does know that the filing and signing is wrongful and the attorney reasonably should know, then sanctions against both are appropriate." *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1475 (2d Cir. 1988) *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).

In assessing the reasonableness of a lawyer's inquiry, "courts focus on what was objectively reasonable to believe at the time the pleading ... was submitted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 09 CIV. 2227 (PAC), 2013 WL 1746062, at *4 (S.D.N.Y. Apr. 23, 2013) (Crotty, D.J.) (internal citations and quotations omitted). "A court called upon to judge the reasonableness of an attorney's factual inquiry should consider how much time the attorney had for investigation; the feasibility of verifying facts; the complexity of factual issues; and the need for additional discovery to develop the factual claim." *Gottlieb v. Heller*, 93 CIV. 3081 (LAP), 1994 WL 557092, at *3 (S.D.N.Y. Oct. 7, 1994) (Preska, D.J.). Moreover, a lawyer cannot escape sanctions when he relied solely upon his client's representations where "red flags existed that should have prompted a further investigation." *In re Parikh*, ____ B.R. ____, AP 808-8062-REG, 2014 WL 1567391, at *9 (Bankr. E.D.N.Y. Apr. 17, 2014). Here, there was the reddest of flags: the fact that Mr. Kerik had pleaded

13

guilty to fraud charges that had been brought against him in both the Southern District of New York and the District of Columbia ("DC Case").[4] Faced with a client who had pleaded guilty to charges of fraud made against him in two Federal District Courts, Mr. Tsimpedes was required to do more than just take his client's word – especially because, as explained below, it would have required minimal effort for Mr. Tsimpedes to test the truth of what Mr. Kerik was telling him. All that he needed to do was speak to Mr. Kerik's prior counsel and/or review documents available in the public record.

Here there are a host of allegations in the Complaint that merit Rule 11 sanctions. There are many other false allegations in the Complaint, but we focus on the ones that are key to the Complaint and demonstrably false.

First, Paragraph 24 of the Complaint alleges that Mr. Tacopina "concealed from [Mr. Breen, co-counsel in the Bronx Case,] the email correspondence, the negotiations of the terms and representations into the plea allocution with the [Bronx District Attorney's Office]." Paragraph 27 of the Complaint goes on to allege that "Defendant Tacopina masterminded the plea allocution/agreement and its terms limited the knowledge and/or participation of Mr. Breen then sold Mr. Kerik down the river through a series of events reminiscent of the Godfather." Putting aside the inappropriate and nonsensical language about the "Godfather," this allegation is demonstrably false.

Exhibit H to the Burstein Dec. is a June 22, 2006 email from Mr. Tacopina's office attaching a copy of Mr. Kerik's plea agreement with the Bronx District Attorney that was executed by both

---

[4]     Exhibit D to the Burstein Dec. is the docket from the SDNY Case. It shows that, on November 5, 2009, Mr. Kerik pleaded guilty to Counts One and Two of the Indictment in the DC Case (Exhibit F to Burstein Dec.), and Counts Four, Five, Ten, Eleven, Twelve, and Thirteen of the Superseding Indictment in the SDNY Case. (Exhibit G to Burstein Dec.)

Mr. Tacopina and Mr. Kerik.  As alleged in Paragraph 26 of the Complaint, Mr. Kerik pleaded guilty in the Bronx Case on June 30, 2006.  Hence, the indisputable record is that Mr. Breen was sent the final plea agreement eight days before Mr. Kerik's guilty plea.  Mr. Kerik surely had knowledge of this fact, and Mr. Tsimpedes was entirely reckless in making this allegation without at least speaking to Mr. Breen about what Mr. Breen did or did not know about the guilty plea in the 2006 Bronx Case.   While we have no direct proof that Mr. Tsimpedes did not speak to Mr. Breen, the only reasonable inference to be drawn is that he failed to do so because it is inconceivable that Mr. Breen would have lied to Mr. Tsimpedes.

Second, Paragraphs 28-30 and 63-64 of the Complaint allege that Mr. Kerik pleaded guilty to the charges in the Bronx Case based upon Mr. Tacopina's false assurances that the plea would end all law enforcement interest in Mr. Kerik.  This allegation is demonstrably false by reason of Mr. Kerik's October 17, 2012 testimony in the case of *People v. DiTommaso*, Indictment No. 2712/06 (Sup. Ct., Bronx Co.), a case that focused on the very events that led to Mr. Kerik's guilty plea in the Bronx Case.  In that testimony, Mr. Kerik admitted that prior to his plea in the Bronx Case, the prosecutor explicitly told him that his plea would only end New York State criminal problems for him, and that "the Feds have their own system and they could do what they want."  (Exhibit I to Burstein Dec.) (Emphasis in Exhibit supplied).

Having admitted in October of 2012 that he knew that his plea in the Bronx Case would not insulate him from any federal investigation, Mr. Kerik surely knew that his allegations to the contrary in the Complaint on this issue were false.  As for Mr. Tsimpedes, his duty of reasonable inquiry surely included reading the transcript of his client's highly publicized 2012 testimony (*see*

15

Exhibit J to Burstein Dec.) about the very events that led to Mr. Kerik's guilty plea – the event that lies at the heart of the Complaint in this case.

Third, Paragraph 51 of the Complaint alleges that Mr. Kerik first learned on December 6, 2007 that Mr. Tacopina had met with federal prosecutors. This allegation is demonstrably false. Exhibit K to the Burstein Dec. is a copy (with emphasis supplied) of June 25, 2007 email communications about a story by Leonard Levitt in which Mr. Tacopina was quoted as having admitted to meeting with the prosecutors about Mr. Kerik. As Mr. Kerik is a party to these emails, he cannot truthfully claim that he did not learn until December of 2007 that Mr. Tacopina had met with the Government concerning Mr. Kerik. As for Mr. Tsimpedes, he plainly did not make a reasonable inquiry about the truth of this allegation because Mr. Breen was copied on the email about the Levitt story. Hence, had Mr. Tsimpedes asked Mr. Breen about this allegation, the truth would have emerged.

Fourth, Paragraphs 52, 56, 58 and 59 of the Complaint allege that Mr. Tacopina revealed privileged information to the Government in 2007. This claim is sanctionable in light of Exhibit E to the Burstein Dec., Judge Robinson's January 23, 2008 Memorandum Decision and Order disqualifying Mr. Breen as counsel to Mr. Kerik. Judge Robinson specifically held that Mr. Tacopina did not reveal privileged information to the Government. (*Id.* at 9-12.) Plainly, Mr. Kerik knew of this ruling because he had to hire new counsel. As for Mr. Tsimpedes, his conduct is all the more unacceptable because, at ¶ 61 of the Complaint, he specifically refers to Judge Robinson's Order disqualifying Mr. Breen.

Fifth, the entire Complaint is entirely founded on the claim that Mr. Kerik is innocent of all crimes and that his troubles are solely the result of Mr. Tacopina's conduct. Putting aside the fact

16

that his guilty pleas were made under oath, Mr. Kerik's own words, as well as those of his counsel,

show that he knows that this claim is false.

Prior to sentencing, Mr. Kerik sent a personal letter to Judge Robinson (Exhibit L to Burstein

Dec.), stating:

> I am writing to express my sincere apologies to Your Honor, the City of New York and to our country....

> But as I fully recognize, and so deeply regret, on multiple occasions I ... committed the crimes to which I have admitted and for which I will humbly stand before this Court for sentencing....

> I acknowledge and accept responsibility for the dishonor that my violations of the criminal laws of this country have brought ... and I am deeply sorry for and genuinely ashamed of what I did.

> * * *

> To say that I am remorseful is far less than reality and in my eyes; there are no words to express that remorse, sorrow or shame for what I truly feel. I would give anything to take it all back, and can only hope and pray that I live long enough to help right the wrongs I have committed.

> In closing Your Honor, I make no excuses and take full responsibility for the grave mistakes I have made.

In addition, Mr. Kerik's Sentencing Memorandum stated: "Mr. Kerik fully recognizes and

acknowledges that the offenses to which he pleaded guilty are extremely serious.... [H]e similarly

fully accepts that he is deserving of serious punishment." (Exhibit M to Burstein Dec. at 76.)

Given these statements, as well as the fact that he pleaded guilty under oath,[5] Mr. Kerik's

claim of innocence is not merely knowingly false; it borders on the obscene. As for Mr. Tsimpedes,

---

[5]     Indeed, if Mr. Kerik's Complaint is truthful, he should be prosecuted for perjury.

he surely had an obligation to review the docket from the SDNY Case before making any allegations concerning Mr. Kerik's supposed innocence.

## POINT IV

### DETERMINATION OF THE SANCTION TO BE IMPOSED IS PREMATURE

> [I]n exercising its broad discretion to impose Rule 11 sanctions in an appropriate amount, [a] court must also contemplate the limited permissible purposes for Rule 11 sanctions.  *See* Fed.R.Civ.P. 11 (limiting Rule 11 limits sanctions "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"); *see also id.*  Advisory Committee Note (1993) ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct....")

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 07 CV 3208 (KAM) (SMG), 2010 WL 4878955, at *2 (E.D.N.Y. Nov. 23, 2010), *aff'd*, 682 F.3d 170 (2nd Cir. 2012).

Recognizing this principle, we concede that it would be premature to determine the appropriate sanction in this case until the Court determines what conduct, if any, by Plaintiff and/or Mr. Tsimpedes merits sanctions.  For example, if the Court determines that all of the allegations complained of on this motion merit sanctions, we believe that the appropriate penalty would be payment for all of the fees incurred by Mr. Tacopina because the case could not have been brought absent those allegations.  On the other hand, if the Court only partially agrees with Mr. Tacopina's claims on this motion such that the Complaint would have been colorable even absent the offending allegations, it would not be appropriate to require Plaintiff and/or Mr. Tsimpedes to pay all of Mr. Tacopina's fees.

Accordingly, the amount and nature of sanctions to be imposed should be deferred until after the Court determines whether and to what extent Plaintiff and/or Mr. Tsimpedes engaged in sanctionable conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff and Mr. Tsimpedes should be sanctioned pursuant to Fed.

R. Civ. P. 11.

Dated: New York, New York
       May 15, 2014

                              JUDD BURSTEIN, P.C.


                              By_____
                              Judd Burstein (JB-9585)
                              1790 Broadway
                              New York, New York 10019
                              (212) 974-2400
                              (212) 974-2944 (Facsimile)
                              jburstein@burlaw.com

19