**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**BERNARD B. KERIK,**

                **Plaintiff,**

        **- against -**

**JOSEPH TACOPINA,**

                **Defendant.**

---

**14 Cv. 2374 (JGK)**

**OPINION & ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Bernard Kerik, a former New York City Police Commissioner, brings this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), against Joseph Tacopina, the attorney who defended Kerik in a state criminal prosecution and guilty plea. The plaintiff also brings claims under state law for breach of fiduciary duty and defamation.

Kerik alleges that Tacopina formerly defended Kerik against state criminal charges, then subsequently cooperated with federal prosecutors, assisting them in bringing federal criminal charges against Kerik. All of the claims arise from the breakdown of the parties' professional and personal relationships. The action alleges that the defendant committed various acts of wire fraud, obstruction of justice, and extortion in the course of the defendant's law practice, breached fiduciary duties to the plaintiff by cooperating with

1

federal authorities and defrauding the plaintiff in an unrelated transaction, and then publicly defamed the plaintiff before and after the plaintiff filed this lawsuit.

Jurisdiction is proper under 28 U.S.C. § 1332 because there is diversity of citizenship.  Jurisdiction is also proper under 28 U.S.C. § 1331 because the plaintiff has asserted a claim for violation of federal law, namely RICO, 18 U.S.C. § 1961 et seq.  The defendant moves to dismiss all of the claims for failure to state a claim.  For the reasons explained below, the defendant's motion is **granted**.

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also 4 K & D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 532-33 (S.D.N.Y. 2014).

## II.

The Court accepts the plaintiff's allegations in the Amended Complaint as true for purposes of this motion to dismiss. The plaintiff, Kerik, a former New York City Police Commissioner, is a former client and former friend of the defendant, Tacopina, a partner in the law firm of Tacopina Seigel & Turano, P.C. Am Compl. ¶¶ 9, 33, 36. The plaintiff resides in New Jersey, and the defendant resides and has his office in New York. Am. Compl. ¶¶ 6, 9-10.

**A.**

In December 2004, President George W. Bush nominated Kerik to be Secretary of the United States Department of Homeland Security.  Am. Compl. ¶ 34.  Kerik subsequently withdrew his name from consideration for the post.  Am. Compl. ¶ 35.  The heightened attention drew increased scrutiny toward Kerik, which led to investigations by the Bronx County District Attorney and the New York City Department of Investigation of Kerik's acceptance of certain benefits while he was Commissioner of the New York City Department of Corrections.  Am. Compl. ¶ 37. Beginning in December 2004, Tacopina began representing Kerik in responding to media inquiries after the nomination, and defending Kerik against the state investigation.  Am. Compl. ¶¶ 36, 39-40.

On June 30, 2006, Kerik ultimately pleaded guilty in the Supreme Court, Bronx County, to two state misdemeanors of failing to report a loan and accepting a gift.  Am. Compl. ¶ 44; Decl. of Judd Burstein ("Burstein Decl.") Ex. E.  Although Kerik does not challenge this guilty plea, Kerik alleges that he was convinced to plead guilty as a result of false representations by the defendant.  Am. Compl. ¶¶ 42-44.  Kerik contends that Tacopina represented to him that once Kerik pleaded guilty, all other state and federal investigations against Kerik would be resolved.  Am. Compl. ¶ 43.

Kerik's state guilty plea did not end all other investigations.  In July 2006, the United States Attorney's Office for the Southern District of New York began a grand jury investigation of Kerik for financial and tax crimes.  Am. Compl. ¶¶ 4, 135.  In the course of the investigation, on March 12, 2007, federal prosecutors served Tacopina with a grand jury subpoena and Tacopina ceased representing Kerik.  Am. Compl. ¶¶ 136-37.  On June 11, 2007, Tacopina, who was also under federal investigation, began cooperating with federal prosecutors, providing information about Kerik in five separate meetings.  Am. Compl. ¶ 47.  Kerik alleges that Tacopina provided information that had arisen from Tacopina's representation of Kerik in the state case.  Am. Compl. ¶¶49-50.

Kerik was indicted on federal charges on November 8, 2007. Am. Compl. ¶ 143.  On November 15, 2007, federal prosecutors presented Kerik's attorney, Kenneth Breen, with a list of witnesses that included Tacopina.  Am. Compl. ¶ 144.  The federal prosecutors then requested that Breen, who had also represented Kerik in the state case, recuse himself from representing Kerik in the federal case.  Am. Compl. ¶¶ 53-55. When Breen declined, Kerik alleges that on November 19, 2007, Tacopina provided information about Breen's prior representation of Kerik, enabling the federal prosecutors to move successfully to disqualify Breen.  Am. Compl. ¶¶ 56-57.  Kerik also alleges

5

that during Tacopina's proffer sessions with federal authorities, Tacopina lied regarding Tacopina's own history of personal and professional misconduct, and also enlisted an employee to lie to the prosecutors for him.  Am. Compl. ¶¶ 61-62, 70-71.

During the course of the federal investigation, Kerik and Tacopina stayed in touch.  Am. Compl. ¶ 141.  In September 2007, Tacopina sought Kerik's assistance regarding a real estate venture in which Tacopina was representing a client, Raffaello Follieri.  Am. Compl. ¶ 75.  Tacopina told Kerik that if Kerik could obtain funding for this transaction ("the Follieri venture"), then Kerik and Tacopina would split a $1.5 million finder's fee.  Am. Compl. ¶ 76.  Kerik subsequently located an investor for the venture.  Am. Comp. ¶¶ 78-79.  Kerik later learned that the finder's fee agreement was for $2.5 million and had been signed on October 5, 2007.  Am. Compl. ¶ 82.

On December 2, 2007, after Tacopina learned that Kerik was aware of the $1 million discrepancy, Tacopina sent an e-mail to one of Kerik's employees, assuring Kerik that the size of the fee had only recently increased and that Tacopina would split it with Kerik.  Am. Compl. ¶ 86.  On December 9, 2007, Tacopina called Kerik, despite being aware that Tacopina was on a no-contact list as a witness against Kerik.  Am. Compl. ¶ 87.  Tacopina discussed the Follieri venture with Kerik, assuring

Kerik that Tacopina would get the money for Kerik "no matter what," stating, "I know where his money is and I know what liens to put on things, and I'm gonna do that." Am. Compl. ¶ 88.

On November 5, 2009, Kerik pleaded guilty in this Court to federal charges of Obstructing the Administration of the Internal Revenue Law in violation of 26 U.S.C. § 7212(a), Aiding in the Preparation of a False Income Tax Return in violation of 26 U.S.C. § 7206(2), Making False Statements on a Loan Application in violation of 18 U.S.C. § 1014, and Making False Statements to the Executive Branch in violation of 18 U.S.C. § 1001. United States v. Kerik, No. 07cr1027, (S.D.N.Y. Nov. 5, 2009); Burstein Decl. Ex. D. The plaintiff was subsequently sentenced to forty-eight months imprisonment.

**B.**

Kerik alleges that Tacopina committed various acts of misconduct from 2008 to 2013, many of which do not directly involve Kerik. Kerik alleges that in June 2008, Tacopina received a question from an online journalist regarding Tacopina's relationship with Kerik. Am. Compl. ¶ 93. Kerik alleges that rather than responding, Tacopina threatened the journalist with a "frivolous" defamation lawsuit to prevent the journalist from writing anything unfavorable about Tacopina. Am. Compl. ¶ 95. Kerik alleges that similar events occurred in

June 2010 and in September or October 2013.  Am. Compl. ¶¶ 100-102, 108-110.

In late December 2013, Kerik filed a complaint against Tacopina with the attorney disciplinary committee of the Appellate Division of the New York State Supreme Court, alleging various acts of misconduct arising from Tacopina's representation of Kerik and Tacopina's cooperation with federal authorities.  See Am. Compl. Ex. C.  Shortly thereafter, Tacopina and his counsel denied the accusations in a December 28, 2013 article in the New York Daily News and a December 29 New York Post article.  Am. Compl. ¶ 160.  In the December 28 article, Tacopina stated that he only met with the federal prosecutors "once or twice", despite Kerik's allegation that Tacopina met with them five separate times.  Am. Compl. ¶¶ 47, 160.  Tacopina also accused Kerik of spreading "lies and innuendo."  Am. Compl. ¶ 160.  In the December 29 article, Tacopina denied that he knew he was on the witness list when he called Kerik while the federal prosecution was pending, and stated that he had spoken with prosecutors "with Kerik's blessing."  Am. Compl. ¶ 160.  Kerik alleges that during his phone call with Tacopina, Tacopina had referred to the fact that Tacopina was on the witness list.  Am. Compl. ¶ 88.

Kerik alleges that Tacopina or Tacopina's counsel made several defamatory statements during the pendency of this case.

On May 12, 2014, Tacopina and his counsel denied that Tacopina had cooperated with the Government, and stated that notes from Tacopina's proffer sessions "would've shown even more evidence of Mr. Kerik's allergy to the truth."  Am. Compl. ¶ 160.

On or about May 15, 2014, Tacopina, through his counsel, wrote a letter to federal prosecutors requesting that they pursue perjury charges against Kerik based mainly on Kerik's allegation in the original complaint that Tacopina's actions had led to his guilty plea in federal court.  Am. Compl. Ex. D.  The letter states, "I know that lawyers in civil litigations often try to convince prosecutors to pursue criminal cases against an opposing party, and the purpose of this letter is to do just that."  Am. Compl. Ex. D.  The letter claims that Kerik has "made a mockery of the oath he took when he pled guilty" by alleging in the sworn original complaint in this action that "but for" Tacopina's conduct, Kerik would not have "`been charged by federal prosecutors'" or "`pled guilty to federal charges.'"  Am. Compl. ¶ 125, Ex. D; Compl. ¶ 67.  The letter states that Kerik's "sworn guilty plea allocution and his sworn Complaint . . . cannot be harmonized.  As such, **he either perjured himself during his sworn guilty plea allocution or in his sworn Complaint.**"  Am. Compl. Ex. D (emphasis in original).

In a May 19, 2014 New York Post article regarding the letter, Tacopina's counsel stated that he "hopes prosecutors 'do

what's right'" and pursue perjury charges against Kerik, and stated that Kerik "has been brazenly waving his thumbs at the judicial system. . . . Ignoring what Bernie Kerik has done would be similar to a policeman standing around watching someone rob a bank." See Am. Compl. ¶ 160; Burstein Decl. Ex. I. Additionally, Kerik alleges that on May 27, 2014, following a hearing in this Court, Tacopina's counsel told reporters that Kerik is a "con man" who belongs in a "sanitarium."  Am. Compl. ¶ 160; Burstein Decl. Ex. G.

### C.

On January 23, 2014, Kerik brought this action in the United States District Court for the District of New Jersey.  On April 3, 2014, that court  granted Tacopina's motion to transfer the case to the Southern District of New York, holding that venue was not proper in the District of New Jersey and that transfer would be in the interest of justice pursuant to 28 U.S.C. § 1406.  Kerik v. Tacopina, No. 14cv488, (D.N.J. Apr. 3, 2014).  Kerik thereafter filed an Amended Verified Complaint in this Court on June 3, 2014.

### III.

The plaintiff brings a claim under the RICO Act, 18 U.S.C. §§ 1961 et seq.  Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United

States district court." 18 U.S.C. § 1964(c).  The plaintiff

alleges that the defendant violated 18 U.S.C. § 1962(c).  Under

§ 1962(c),

> [i]t shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign commerce,
> to conduct or participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.

Id. § 1962(c). In order to state a claim under § 1962(c), a

plaintiff must allege "(1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity." DeFalco v.

Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (quoting Sedima,

S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  "Racketeering

activity" encompasses, among other things, any act indictable as

a crime enumerated under 18 U.S.C. § 1961(1)(B), which includes,

for purposes relevant to this motion, wire fraud (18 U.S.C. §

1343), obstruction of justice (18 U.S.C. § 1503), and extortion

(18 U.S.C. § 1951).  To establish a "pattern" of racketeering

activity, a plaintiff must plead "at least two predicate acts,

[and] show that the predicate acts are related, and that they

amount to, or pose a threat of, continuing criminal activity."

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d

Cir. 1997) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492

U.S. 229, 239 (1989)).  "Predicate acts are 'related' for RICO

purposes when they 'have the same or similar purposes, results,

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  Id. (quoting H.J. Inc., 492 U.S. at 240); see also 4 K & D Corp., 2 F. Supp. 3d at 535.

### A.

The defendant first argues that the §1962(c) claim fails because the plaintiff has failed to allege a RICO "enterprise" distinct from the "person" alleged to have violated § 1962(c). A plaintiff asserting a RICO claim arising under § 1962(c) "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name," Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001), because the statute applies only to " 'person[s]' who are 'employed by or associated with' the 'enterprise.'" Id. (citing and quoting 18 U.S.C. § 1962(c)) (alteration in original). Under such a "distinctness" requirement, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (citation omitted); see also 4 K & D Corp., 2 F. Supp. 3d at 535-36.  Even when the plaintiff is alleging an "association-in-fact" enterprise, the enterprise must have a distinct identity from the RICO person and consist

of more than one member.  See Rosenson v. Mordowitz, No.

11cv6145, 2012 WL 3631308, at *9-10 (S.D.N.Y. Aug. 23, 2012).

Courts have repeatedly dismissed § 1962(c) claims alleging

that a corporation was simultaneously a RICO "person" and a RICO

"enterprise" (or part of a RICO "enterprise" from which the

corporation is not distinct). See, e.g., Cruz v. FXDirectDealer,

LLC, 720 F.3d 115 (2d Cir. 2013); Anatian v. Coutts Bank

(Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999); Riverwoods,

30 F.3d at 344.  In Riverwoods, the Second Circuit Court of

Appeals held that a complaint failed to state a claim under

§ 1962(c) because the plaintiffs alleged that the corporation

was a RICO "person" and that the corporation plus all its

employees and agents was the RICO "enterprise,"[1] from which the

corporation can hardly be considered distinct.  30 F.3d at 344.

Similarly, in Cruz, a decision on which the defendant relies,

the Court of Appeals held that the complaint's allegations

failed to satisfy the distinctness requirement in a case in

which a corporation was alleged to be a RICO "person" conducting

the deceptive practices of a RICO "enterprise" not distinct from

the corporation.  Cruz, 720 F.3d at 120-21.  After disregarding

various alleged members of the "enterprise" because they lacked

---

[1] Indeed, in Cedric Kushner, the Supreme Court called this "enterprise" in
Riverwoods an "oddly constructed entity," and noted that "[i]t is less
natural to speak of a corporation as 'employed by' or 'associated with'" such
an entity. 533 U.S. at 164 (citing Riverwoods, 30 F.3d at 344).

a "common purpose to engage in a particular fraudulent course of conduct," the Court of Appeals was left with an "enterprise" that was alleged to consist of the corporation itself, its parent company, its chief operating officer, and its corporate counsel. Id. (internal citations omitted). Therefore, cases like Cruz and Riverwoods make it clear that, if a plaintiff alleges a corporation to be a RICO "person" which conducts or participates in the affairs of an "enterprise" through a pattern of racketeering activity in violation of § 1962(c), the RICO "enterprise" cannot consist solely of the corporation plus its owners and/or employees.

On the other hand, the distinctness requirement may be satisfied if a complaint alleges a corporation itself to be the RICO "enterprise," with its owners or employees being the RICO "persons" conducting the affairs of the corporation through a pattern of racketeering activities. Cedric Kushner, 533 U.S. at 163. In Cedric Kushner, a unanimous Supreme Court found a complaint to have satisfied the distinctness requirement even though the alleged RICO "person" was the president and sole shareholder of the corporation which was the alleged RICO "enterprise." Id. The Supreme Court reasoned that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities ...," id., and that § 1962(c) does

14

not require any more distinctness than such a legal separation between the person and the corporate entity.  Id. at 165. Subsequent cases have followed this distinction.[2]  See, e.g., 4 K & D Corp., 2 F. Supp. 3d at 536-37; Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013); UlIT4less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275, 287–88 (S.D.N.Y. 2012) (finding sufficient distinctness "where a parent corporation and its subsidiary are alleged to be the RICO 'person,' and a separately incorporated subsidiary is alleged to be the RICO 'enterprise'").

In this case, Kerik alleges that the enterprise is the "Tacopina Firm," which he describes as the "members, partners, and associates of the law firm of Joseph Tacopina PC, and its successor in interest, Tacopina Seigel & Turano, P.C."  Am. Compl. ¶ 11.  The plaintiff appears to allege that this is an "associated in fact" enterprise.  Am. Compl. ¶ 12.  The defendant contends that the plaintiff has failed to plead a RICO enterprise because a "RICO enterprise may [not] consist merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant."  Cruz,

---

[2] Indeed, in City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425 (2d Cir. 2008), rev'd and remanded on other grounds sub nom. Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010), the Second Circuit Court of Appeals held that even a sole proprietorship could be a RICO "enterprise" and satisfy the distinctness requirement, so long as the sole proprietorship is not "strictly a one-man show."  Id. at 448-49 (quoting and citing McCullough v. Suter, 757 F.2d 142, 144 (7th Cir. 1985)) (internal quotation marks omitted).

720 F.3d at 121 (citation omitted).  However, unlike Cruz, there is no corporate defendant in this case, only an individual defendant (Tacopina) who allegedly conducted and participated in the affairs of the enterprise (the Tacopina Firm).  This case thus falls squarely into the rule set out in Cedric Kushner, because the "corporate/owner employee, a natural person, is distinct from the corporation itself."  533 U.S. at 163.  See Palatkevich v. Choupak, No. 12cv1681, 2014 WL 1509236, at *14-15 (S.D.N.Y. Jan. 24, 2014) (finding distinctness requirement met for association-in-fact enterprise "where the defendant 'person' is a natural person who works for a corporation instead of the corporation itself"); see also G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 547 (S.D.N.Y. 2002) ("[Defendants], as named partners and members of the law firm of Baron & Budd, are separate and distinct legal entities from the law firm they control, and which in turn purportedly controls the B & B Enterprise.")

It makes no difference that the plaintiff may be alleging an association-in-fact enterprise that includes people outside of the defendant's law firm.  "A RICO enterprise based on an association-in-fact theory is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is 'proved by evidence of an ongoing organization, formal or informal, and by evidence that

the various associates function as a continuing unit." City of
New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 447 (2d Cir.
2008) (quoting United States v. Turkette, 452 U.S. 576, 583
(1981)), rev'd and remanded  on other grounds sub nom. Hemi
Grp., LLC v. City of New York, N.Y., 559 U.S. 1 (2010).  To
determine whether the plaintiff has sufficiently pleaded an
association-in-fact enterprise, courts "look to the hierarchy,
organization, and activities to determine whether an alleged
association functioned as a unit."  Id. (citation and quotations
omitted).  The plaintiff has alleged that all of the members of
the "Tacopina Firm," the "members, partners, and associates" of
the defendant's law firm, have worked together to commit various
acts of wire fraud and extortion for the common purpose of
generating profits for the firm.  The defendant is the
controlling figure, and he was allegedly assisted by the
coordinated efforts of the firm.  These allegations suffice to
show a "continuing unit" with "one or more common purpose[s]."
Palatkevich, 2014 WL 1509236, at *12 (citations and quotation
omitted) (holding that the plaintiff alleged an association-in-
fact enterprise).

     The defendant points to a footnote in the Amended Complaint
in which the plaintiff alleges that the enterprise includes a
host of individuals, such as "investigators, interns, of-counsel
attorneys," and others hired to assist the Tacopina Firm "in any

17

capacity." Am. Compl. ¶ 11 n.1. The defendant argues that the plaintiff cannot show how all of these individuals function as a unit, and therefore has not pleaded an association-in-fact. However, the allegation that the Tacopina Firm, including its partners and members, was the enterprise, would have been sufficient to allege an enterprise sufficiently distinct from the defendant Tacopina. Cedric Kushner, 533 U.S. at 163; G-I Holdings, Inc., 238 F. Supp. 2d at 547. The fact that the plaintiff has embroidered the description of the enterprise does not detract from the plaintiff's adequate pleading of a core enterprise.

### B.

To state a RICO claim, the plaintiff must allege two or more related "predicate acts" that constitute a "pattern" of racketeering activity. Schlaifer Nance & Co., 119 F.3d at 97. A plaintiff must allege, at a minimum, that "a defendant personally committed or aided and abetted the commission of two predicate acts." McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992) (citing H.J. Inc., 492 U.S. at 237; Sedima, 473 U.S. at 496 n. 14); see also 4 K & D Corp., 2 F. Supp. 3d at 537. In this case, the plaintiff alleges eleven predicate acts consisting of wire fraud in violation of 18 U.S.C § 1343, obstruction of justice in violation of 18 U.S.C. § 1503, and extortion and attempted extortion in violation of 18 U.S.C.

§ 1951.  The defendant argues that the plaintiff has failed to plead the elements of any plausible, actionable predicate act.

**i.**

The plaintiff's first alleged predicate act alleges wire fraud in violation of 18 U.S.C. § 1343, and centers on the defendant's representation of the plaintiff in the plaintiff's state case in the New York State Supreme Court, Bronx County. The plaintiff alleges that the defendant misled the plaintiff in phone calls and e-mails concerning the consequences of the plaintiff's guilty plea, telling him that his plea would end other investigations against the plaintiff when in fact it did not.  The defendant argues that the plaintiff has failed to prove proximate cause because his acknowledgment of his guilt in the Supreme Court severed any chain of causation between the defendant's allegedly misleading acts and any harm suffered by plaintiff as a result of the plea.

Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c).  Therefore, "[t]o satisfy RICO's standing requirements, a plaintiff must demonstrate, '(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation.'" Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003) (quoting

Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990)).

The causation prong requires that a plaintiff bringing a civil RICO claim demonstrate that the plaintiff suffered an injury proximately caused by the defendant's violation of § 1962. See 18 U.S.C. § 1964(c); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).  In particular, "[w]here a RICO violation is predicated on acts sounding in fraud, a plaintiff must allege that the defendant's acts were not only the 'but-for' cause of plaintiff's injury, but the proximate cause as well, necessitating 'some direct relation between the injury asserted and the injurious conduct alleged'; '[a] link that is too remote, purely contingent, or indirect is insufficient.'" Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs, 888 F. Supp. 2d 491, 503-04 (S.D.N.Y. 2012) (quoting and citing Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010)), aff'd, 514 Fed. Appx. 51 (2d Cir. 2013).

In Holmes, the Supreme Court explicitly rejected the proposition that mere "but-for" causation would satisfy the statutory requirement for recovery and held that the "by reason of" language requires that the violation of § 1962 be the "proximate cause" of the plaintiff's injury.  Holmes, 503 U.S. at 265-68.  The Holmes Court identified three policy

considerations in evaluating whether a plaintiff's alleged harm satisfies the "proximate cause" requirement for purposes of civil RICO claims: (1) whether recognizing the plaintiff's claims would lead to a difficult task of "ascertain[ing] the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) whether recognizing such claims "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries"; and (3) whether the "directly injured victims" can "vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." Holmes, 503 U.S. at 269-70 (citations omitted); see also Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 381-82 (2d Cir. 2001); 4 K & D Corp., 2 F. Supp. 3d at 540-41.

A plaintiff has not pleaded proximate cause "when factors other than the defendant's [predicate act] are an intervening direct cause of a plaintiff's injury," because "that same injury cannot be said to have occurred by reason of the defendant's actions." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). In this case, whatever the effect of the defendant's allegedly misleading statements, the plaintiff subsequently accepted responsibility for his criminal violations

21

in state court by his own free will.  Indeed, the plaintiff
explicitly states in his Amended Complaint that he is not
recanting his guilty plea and his Amended Complaint should not
be construed as a collateral attack on his conviction.  Am.
Compl. ¶ 32 n.3.  The ensuing investigations against the
plaintiff were caused directly by his own guilty plea, severing
any chain of causation against the defendant.  See Pantoja v.
Banco Popular, No. 11cv3636, 2012 WL 4069297, at *5 (S.D.N.Y.
Aug. 9, 2012) (holding that the plaintiff's guilty plea
admitting to fraud "disrupt[ed] any possible chain of proximate
cause necessary to state a RICO claim" against defendants for
their fraudulent actions), aff'd, 545 F. App'x 47 (2d Cir.
2013); Moore v. Guesno, 485 F. Supp. 2d 300, 306 (W.D.N.Y. 2007)
(holding that where plaintiff "concede[d] that he pleaded guilty
in the presence of counsel," he could not establish that the
alleged harm was "the result of anything other than his own
admitted criminal conduct"), aff'd, 301 F. App'x 17 (2d Cir.
2008).  Because the plaintiff cannot show causation, the
plaintiff's first alleged predicate act fails to state a claim
for a RICO violation based on wire fraud.

In any event, any claim based on this act is also time-
barred.  RICO claims are subject to a four-year statute of
limitations.  See Rotella v. Wood, 528 U.S. 549, 552 (2000);
Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S.

22

143, 156 (1987); Pearl v. City of Long Beach, 296 F.3d 76, 79
n.1 (2d Cir. 2002).  "Federal courts ... generally apply a
discovery accrual rule when a statute is silent on the issue, as
civil RICO is here." Rotella, 528 U.S. at 555; In re Merrill
Lynch Ltd. P'ships Litig., 154 F.3d 56, 60 (2d Cir. 1998).  "The
clock begins to run when the plaintiff has 'inquiry notice' of
his injury, namely when he discovers or reasonably should have
discovered the RICO injury." Koch v. Christie's Int'l PLC, 785
F. Supp. 2d 105, 114 (S.D.N.Y. 2011) (citing Bankers Trust Co.
v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)), aff'd, 699 F.3d
141 (2d Cir. 2012).

    The first step in the statute of limitations analysis is to
determine when the plaintiff sustained the alleged injury for
which the plaintiff seeks redress. The court then determines
when the plaintiff "discovered or should have discovered the
injury and begin[s] the four-year statute of limitations period
at that point." Merrill Lynch P'ships, 154 F.3d at 59. As a
general matter, "the limitations period does not begin to run
until [a plaintiff] ha[s] actual or inquiry notice of the
injury." Id. at 60.  See also Koch v. Christie's Int'l PLC, 699
F.3d 141, 148, 150-51 (2d Cir. 2012).

    Even accepting plaintiff's allegations of injury and
causation, the latest date on which the plaintiff could
plausibly be said to have notice of the injury—the alleged

23

consequences of his guilty plea—is when the plaintiff was
indicted on federal charges in November 2007, well over four
years before the plaintiff's filing of this complaint in January
2014.

The plaintiff responds generally to the defendant's
arguments regarding the statute of limitations that the
plaintiff is alleging a "pattern of racketeering activity," with
at least one predicate act occurring less than four years prior
to the filing of the complaint and no ten-year gaps between
acts. See United States v. Eppolito, 543 F.3d 25, 50 (2d Cir.
2008). In civil RICO claims, the exception based on new
injuries caused by the same defendant is referred to as the
"separate accrual" rule. Merrill Lynch P`ships, 154 F.3d at 59.
The "separate accrual" rule provides that a new four-year period
is triggered each time the plaintiff "discovers, or should have
discovered, a new injury" caused by otherwise time-barred
predicate acts. Bingham v. Zolt, 66 F.3d 553, 559-60 (2d Cir.
1995). The Court of Appeals has been "careful to note that the
injury had to be new and independent to be actionable." Merrill
Lynch P'ships, 154 F.3d at 59 (citing Bingham, 66 F.3d at 560).
Even in the case of a "new and independent injury," the
plaintiff can "win compensation only for injuries discovered or
discoverable within the four-year 'window' before suit was
filed." Bingham, 66 F.3d at 560. Because the plaintiff's

injury did not occur within four years before the filing of this suit, he can no longer recover for it now.

To the extent the plaintiff relies on criminal RICO cases to argue that the defendant's alleged scheme is a RICO conspiracy that "is not complete [for statute of limitations purposes] until the purposes of the conspiracy have been accomplished or abandoned," Eppolito, 543 F.3d at 47 (citation omitted), this argument is without merit.  "[T]here are significant differences between civil and criminal RICO actions, and [the Supreme Court] has held that criminal RICO does not provide an apt analogy" for the purpose of determining the civil limitations period. Klehr v. A.O. Smith Corp., 521 U.S. 179, 188 (1997). See also Zahl v. Kosovsky, No. 08cv8308, 2011 WL 779784, at *13 (S.D.N.Y. Mar. 3, 2011) (rejecting reliance on criminal RICO actions to extend the four-year window after discovery of injury), aff'd, 471 F. App'x 34 (2d Cir. 2012). The plaintiff's first alleged act is therefore time-barred.

Finally, the plaintiff argues that the statute of limitations should not apply because for any acts that the Court finds are time-barred, he is seeking not compensatory damages but injunctive relief, such as dissolving the RICO enterprise, the Tacopina Firm, or barring the defendant from practicing law in this District.  Section 1964(a) authorizes courts "to prevent and restrain violations of [RICO] by issuing appropriate orders,

25

including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in the enterprise; imposing reasonable restrictions on the future activities or investments of any person, . . . or ordering dissolution or reorganization of any enterprise." 18 U.S.C. § 1964(a); United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 995 F.2d 375, 377 (2d Cir. 1993). However, § 1964(c) states that private litigants may seek monetary damages, and whether private litigants may obtain injunctive relief under § 1964(a) is an open and questionable proposition in this Circuit. See Sedima, S.P.R.L. v. Imrex Co., Inc., 741 F.2d 482, 489 n.20 (2d Cir. 1984) ("While post-enactment legislative history is not by any means conclusive, it cannot merely be ignored. It thus seems altogether likely that § 1964(c) as it now stands was not intended to provide private parties injunctive relief.") (internal citation omitted), rev'd. on other grounds, 473 U.S. 479 (1985); Am. Med. Ass'n v. United Healthcare Corp., 588 F. Supp. 2d 432, 445 (S.D.N.Y. 2008) (noting that no case within this jurisdiction that remains good law has recognized a right to injunctive relief for private litigants).

Even if the plaintiff were able to obtain injunctive relief, the plaintiff has cited no law to support the proposition that the statute of limitations does not apply to a

plaintiff seeking injunctive relief rather than damages.
Moreover, any plaintiff seeking injunctive relief must show that
"he has sustained or is immediately in danger of sustaining some
direct injury as the result of the challenged . . . conduct."
Williams v. City of New York, No. 12cv6805, 2014 WL 3639153, at
*3 (S.D.N.Y. July 22, 2014) (citing Shain v. Ellison, 356 F.3d
211, 215 (2d Cir. 2004)).  The plaintiff admits that he will not
be hiring Tacopina or anyone from his firm again, and thus
cannot show that he is in danger of sustaining any injury from
Tacopina's practice of law.  Therefore, the plaintiff has no
standing to seek injunctive relief in this case.

**ii.**

The plaintiff's second through fifth alleged predicate acts
all relate to the defendant's cooperation with federal
authorities during their investigation of the plaintiff for
financial crimes.  The plaintiff alleges that the defendant's
alleged disclosure of privileged information, lying about the
defendant's own misconduct during the interviews, and enlisting
another to lie for him in order to assist the federal
authorities in their investigation constitutes obstruction of
justice under 18 U.S.C. § 1503.

Because the plaintiff pleaded guilty to the federal charges
against him, he cannot satisfy the causation requirement for
these acts for the same reasons explained with respect to the

27

state case.  Whatever improprieties the defendant committed in cooperating with federal authorities, the plaintiff's voluntary and willing decision to plead guilty severs the causal chain between the defendant's acts and any harm suffered by the plaintiff as a result of his conviction.

These alleged acts are also time-barred.  The Complaint alleges that the defendant first began cooperating with federal authorities in June 2007.  The plaintiff was indicted on the federal charges in November 2007, and the Complaint alleges that the plaintiff first learned that the defendant disclosed privileged information in December 2007.  Am. Compl. ¶¶ 146–47. Therefore, the latest the plaintiff learned about any injury arising from these alleged acts is well before January 2010, which is four years prior to the date this action was brought. As discussed above, the plaintiff's argument that there is a continuous conspiracy does not extend the statute of limitations for these time-barred predicate acts.

### iii.

The plaintiff's sixth alleged predicate act relates to the Follieri Venture.  The plaintiff argues that the defendant committed an act of wire fraud under 18 U.S.C. § 1343 by misleading the plaintiff about the finder's fee, originally informing him that it was $1.5 million when it was actually $2.5 million.  The plaintiff alleges that the defendant sent him an

e-mail claiming not to know about the fee, and also told the
plaintiff over the phone that the fee was intended to be split
with the plaintiff.  The plaintiff does not allege in the
Complaint that this fee was eventually paid or that the
defendant has withheld it from him.

In order to plead standing under RICO, the plaintiff must
allege that he incurred a cognizable injury to his "business or
property."  18 U.S.C. § 1964(c); Uzan, 322 F.3d at 135.  The
plaintiff must allege injury that is "to [his] property, and
not, for example, physical, emotional or reputational harm."
World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp.
2d 486, 518 (S.D.N.Y. 2007) (quoting State Farm Mut. Auto. Ins.
Co. v. CPT Med. Servs., P.C., 375 F.Supp.2d 141, 152 (E.D.N.Y.
2005)), aff'd, 328 F. App'x 695 (2d Cir. 2009).  The plaintiff
must allege "actual, quantifiable injury."  McLaughlin v. Am.
Tobacco Co., 522 F.3d 215, 227 (2d Cir. 2008) (emphasis in
original), abrogated on other grounds by Bridge v. Phoenix Bond
& Indem. Co., 553 U.S. 639, 659 (2008).  Courts have required
that the plaintiff show "concrete financial loss" in order to
show injury under RICO.  Makowski v. United Bhd. of Carpenters &
Joiners of Am., No. 08cv6150, 2010 WL 3026510, at *12 (S.D.N.Y.
Aug. 2, 2010) (citing Evans v. City of Chicago, 434 F.3d 916,
932 (7th Cir. 2006)); Maio v. Aetna, Inc., 221 F.3d 472, 482-83

(3d Cir. 2000));  see also Chaset v. Fleer/Skybox Int'l, LP, 300
F.3d 1083, 1087 (9th Cir. 2002).

Here, the plaintiff is alleging that his share of the
actual finder's fee that he was owed for successfully finding an
investor for the Follieri Venture was greater than he was
originally informed.  Therefore, the plaintiff's only injury
that he could allege is the expectation of receiving a larger
finder's fee.  However, he does not allege that he has received
any of the finder's fee at all, or that the defendant has
received the fee and is withholding it from him.  Consequently,
the plaintiff has not shown any actual, quantifiable injury to
his business or property, and lacks standing under RICO to state
a claim based on this alleged act.

Furthermore, this alleged predicate act is time-barred.
The Complaint alleges that the plaintiff first learned from a
representative of the investor that the finder's fee was
actually $2.5 million on November 30, 2007.  Am. Compl. ¶ 81.
The plaintiff therefore has failed to plead that this act
occurred within the requisite four-year period prior to the
filing of the current lawsuit.

### iv.

The plaintiff's seventh through ninth alleged predicate
acts relate to the defendant's alleged extortion of various

30

journalists to prevent them from writing unfavorable articles about the defendant.[3]

The plaintiff plainly does not have standing to bring a RICO claim on the grounds that the defendant extorted other people.  The plaintiff argues the following causal chain: by threatening frivolous litigation, the defendant coerced several journalists into not publishing unfavorable stories about the defendant (except for the ninth alleged act, in which the story was published); once those stories were not printed, the defendant was able to protect his "falsely inflated image" and hide the plaintiff's side of the story (to the extent the stories pertained to the plaintiff); the plaintiff suffered reputational damage as a result.

First, reputational injuries are insufficient to support a civil RICO claim.  See, e.g., Jakks Pac., 530 F. Supp. 2d at 518.  Second, the "attenuated connection" between the defendant's conduct and the plaintiff's alleged injury implicates the same "fundamental concerns" of causation described in Anza.  547 U.S. at 459.  As in that case, if the plaintiff has been injured at all, he has only been injured indirectly, and there are third parties that have allegedly been injured who "can be expected to vindicate the laws by pursuing

---

[3] One of the alleged acts occurred in June 2008, and is therefore time-barred. The other two occurred in 2010 and 2013.  These RICO predicate acts are therefore timely filed.

their own claims." Id. at 460.  Moreover, even if any
reputational injury suffered by the plaintiff as a result of
these acts were cognizable, it would be difficult to discern how
much of it was due to these acts and not to "other factors."
Id. at 465-66.

Furthermore, the plaintiff's allegations do not plausibly
state a claim of extortion or attempted extortion under the
Hobbs Act, 18 U.S.C. § 1951.  To plead extortion, the plaintiff
must show that the defendant obtained property, with a victim's
consent, "induced by wrongful use of actual or threatened force,
violence or fear or under color of official right."  18 U.S.C. §
1951(b)(2).  See also Ben Hur Moving & Storage, Inc. v. Better
Bus. Bureau of Metro. New York, Inc., No. 08cv6572, 2008 WL
4702458, at *4 (S.D.N.Y. Oct. 3, 2008).  The Supreme Court has
clarified that the "property" obtained must be "transferable—
that is, capable of passing from one person to another." Sekhar
v. United States, 133 S. Ct. 2720, 2725 (2013) (emphasis in
original).  After detailing the common law definition of
extortion and its history under the Hobbs Act, the Court in
Sekhar held that it must be alleged that the defendant extorted
"something of value from the victim that can be exercised,
transferred, or sold," and not, as was at issue in that case, an
"intangible property right to give disinterested legal advice."
Id. at 2726-27.

In this case, the only "property" that the defendant plausibly could be said to have extorted from the third parties was their intangible right to publish an article about him. Therefore, there is no "transferable" item of value being passed from the third parties to the defendant. Id. at 2725. See also Spiteri v. Russo, No. 12cv2780, 2013 WL 4806960, at *47-48 (E.D.N.Y. Sept. 7, 2013) (dismissing plaintiff's extortion claim when he alleged that he was extorted out of continuing a lawsuit).

Finally, in most cases, a threat of litigation, even if it is meritless, does not constitute "wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2); FindTheBest.com, Inc. v. Lumen View Tech. LLC, No. 13cv6521, 2014 WL 2050610, at *4-5 (S.D.N.Y. May 19, 2014). Although the Court of Appeals of the Second Circuit has not addressed the question, numerous courts of appeals for other circuits and several district court judges within this district have held that "the filing of meritless litigation, or even malicious prosecution, is not a predicate RICO act." FindTheBest.com, 2014 WL 2050610, at *4 (collecting cases). This is true because a lawsuit filed by lawful means is not "wrongful," as defined by the Hobbs Act, and courts would be wary of holding that "the filing of a meritless lawsuit is . . . extortionate lest every unsuccessful lawsuit lead to an extortion claim and thus chill

33

resort to the courts." <u>Chevron Corp. v. Donziger</u>, 974 F. Supp. 2d 362, 577 (S.D.N.Y. 2014).  In <u>Donziger</u>, the court found an exception to this general rule because the lawsuit was "not pursued by lawful methods alone."  <u>Id.</u> at 577-78.  There is no allegation in this case that the defendant pursued litigation by using any unlawful methods.  Therefore, the plaintiff has not alleged extortion or attempted extortion in any of the seventh through ninth predicate acts.

**v.**

The plaintiff's tenth alleged predicate act relates to the defendant's advertising on his website about the plaintiff.  The plaintiff alleges that the defendant is prominently displaying false information about the defendant's representation of the plaintiff, claiming to have achieved various successes.  The plaintiff claims that these misrepresentations are aimed at inflating the defendant's image, and constitute wire fraud under 18 U.S.C. § 1343.

As with the claims of extortion, the plaintiff cannot plausibly allege that he is the direct target of this allegedly fraudulent scheme.  The defendant's website is open to the general public, and any inflating of the defendant's image is presumably aimed at procuring more business from people other than the plaintiff, who has no intention of providing any further business to the defendant.  The plaintiff does not have

34

standing to bring a RICO action based on the alleged defrauding of other people, without any showing of direct harm to the plaintiff.  See Anza, 547 U.S. at 460.

Finally, the plaintiff's eleventh alleged predicate act relates to the letter written by defendant's counsel to federal authorities requesting that they investigate the plaintiff for perjury.  The plaintiff contends that this letter constitutes a violation of the Rules of Professional Conduct and an attempt to convince federal authorities to bring false criminal charges against the plaintiff, and is therefore an obstruction of justice under 18 U.S.C. § 1503.

The defendant argues that because the Complaint does not allege that any investigation has been initiated in response to this letter, the plaintiff has not shown that he has suffered any damages yet or that he ever will, and his claim is therefore not ripe.  A "cause of action does not accrue under RICO until the amount of damages becomes clear and definite." First Nationwide Bank, 27 F.3d at 768.  The Court of Appeals for the Second Circuit has held "a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated." Id.  Therefore, a lender's claim against a debtor for recovery of a secured loan is not ripe

35

until the lender has sought foreclosure.  Id.; Uzan, 322 F.3d at
135-36.

In this case, the plaintiff has not alleged that federal
authorities have begun an investigation into the plaintiff as a
result of the defendant's letter, or that any adverse action has
been taken at all.  The plaintiff thus has not shown that any
damages that could conceivably arise from the letter have become
"clear and definite" yet. See Harbinger Capital Partners Master
Fund I, Ltd. v. Wachovia Capital Mkets, LLC, No. 07cv8139, 2008
WL 3925175, at *4 (S.D.N.Y. Aug. 26, 2008) ("Because collection
efforts in the ongoing bankruptcy proceeding have not been
completed, whether and to what extent the estate's recovery
against third parties may offset plaintiffs' damages remains
uncertain."), aff'd, 347 F. App'x 711 (2d Cir. 2009).

Moreover, the plaintiff has failed to allege the elements
of obstruction of justice in violation of 18 U.S.C. § 1503.  To
plead a violation of § 1503 based on an alleged obstruction of
justice in connection with a grand jury proceeding, there must
be an allegation that the grand jury proceeding was pending or
anticipated.  United States v. Schwarz, 283 F.3d 76, 106-07 (2d
Cir. 2002).  If the grand jury investigation to be obstructed is
only foreseeable, it is sufficient that a defendant had reason
to believe that the grand jury proceeding "would begin and one
in fact did."  Id. at 107.  In this case, there is no allegation

36

that any grand jury investigation was initiated as a result of the letter.

The plaintiff therefore cannot state a RICO claim based on the eleventh predicate act.

In light of the foregoing, the plaintiff has not plausibly stated a claim that the defendant has committed any actionable predicate acts under RICO.  The defendant's motion to dismiss the plaintiff's RICO claim is therefore **granted.**

### IV.

In his second claim, the plaintiff claims that the defendant breached his fiduciary duty to the plaintiff as his attorney by committing several acts with the same factual predicates as many of the alleged RICO acts.  The defendant moves to dismiss this claim for failure to state a claim upon which relief can be granted.

To allege a breach of fiduciary duty, the defendant must allege "the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct."  Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 549 (2d Cir. 2009) (summary order) (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008)).  See also Renaud

v. Young Men's Christian Ass'n Ret. Fund, No. 11cv524, 2012 WL 363561, at *1 (S.D.N.Y. Feb. 3, 2012).[4]

The plaintiff's allegations concerning the defendant's breaches of duty can be grouped into five general acts: 1) the defendant made false representations to induce the plaintiff's guilty plea while representing him on the state criminal charges; 2) the defendant acted against the plaintiff's interests by cooperating with federal authorities while the plaintiff believed the defendant was still representing him, and by calling the plaintiff despite being on the no-contact list; 3) the defendant appeared to be representing the plaintiff in the Follieri venture and lied about the contents of the deal; 4) the defendant publicly defamed the plaintiff regarding the deal; and 5) the defendant threatened criminal charges to gain advantage in this case.

---

[4] Because this case was transferred from the District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406, New York choice of law rules determine which state's law applies.  Caribbean Wholesales & Serv. Corp. v. US JVC Corp., 855 F. Supp. 627, 629 (S.D.N.Y. 1994) ("If the transfer was made pursuant 28 U.S.C. 1406(a), because venue was improper in the transferor court, then the transferee state's law is applicable.")
Nevertheless, the parties appear to agree that New York law applies here. The Court will accept this assumption for purposes of the breach of fiduciary duty claim.  See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent ... is sufficient to establish choice of law.'") (internal citation omitted).

**A.**

As with the RICO claim, the defendant argues that the plaintiff's claim for breach of fiduciary duty based on the state guilty plea and the meetings with federal prosecutors fails to state a claim because the plaintiff cannot prove causation and the claim is time-barred.

The plaintiff alleges that the defendant made misstatements that allegedly induced the plaintiff to plead guilty in state court. In the context of "attorney liability," or claims relating to "to the manner in which [an] attorney pursued the underlying case," New York law regarding breach of fiduciary duty and attorney malpractice are coextensive. Kirk v. Heppt, 532 F. Supp. 2d 586, 591-92 (S.D.N.Y. 2008). See also Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 865 N.Y.S.2d 14, 20-21 (App. Div. 2008) (holding that, although breach of fiduciary duty claim was not duplicative of malpractice claim, New York malpractice law should be applied); Guiles v. Simser, 826 N.Y.S.2d 484, 485 (App. Div. 2006) ("Plaintiff's cause of action, labeled as a breach of her attorney's fiduciary duty, was essentially a claim of legal malpractice."); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (App. Div. 2004) (dismissing breach of fiduciary duty claim as duplicative of malpractice claim).

To prove causation for a malpractice claim under New York law, the plaintiff must show that "but for the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages." Weil Gotshal, 780 N.Y.S.2d at 596.  Given that the plaintiff voluntarily admitted his guilt of the state crimes in his guilty plea, the plaintiff cannot make this showing.  See, e.g., Yong Wong Park v. Wolff & Samson, P.C., 867 N.Y.S.2d 424, 424 (App. Div. 2008) (dismissing plaintiff's malpractice claim regarding attorney's "wrong legal advice" of consequences of guilty plea as "barred by [the plaintiff's] undisturbed guilty plea"); Sash v. Schwartz, No. 04cv9634, 2007 WL 30042, at *7 (S.D.N.Y. Jan. 4, 2007) ("An undisturbed guilty plea precludes a defendant from raising an issue of legal malpractice."), aff'd, 356 F. App'x 555 (2d Cir. 2009).

However, the plaintiff's allegations that the defendant violated the duty of loyalty and confidentiality by cooperating with federal prosecutors against him and risked the defendant's liberty interest by calling him while on the no-contact list relate to the "manner in which [the defendant interacted with his client;" therefore, the breach of fiduciary duty standard applies rather than a malpractice standard.  Kirk, 532 F. Supp. 2d at 592 (quoting Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 400 n.29 (S.D.N.Y. 2000)) (holding that for breach of fiduciary

40

duty claim, the plaintiff need only prove the existence of a
fiduciary relationship and breach of duty).

Nevertheless, these claims are time-barred.  The New York
Court of Appeals has held that for a breach of fiduciary duty
claim, the "applicable limitations period depends on the
substantive remedy that the plaintiff seeks." IDT Corp. v.
Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 272 (N.Y.
2009). "Where the remedy sought is purely monetary in nature,
courts construe the suit as alleging 'injury to property' within
the meaning of CPLR 214 (4), which has a three-year limitations
period." Id. "Where, however, the relief sought is equitable
in nature, the six-year limitations period of CPLR 213 (1)
applies." Id.

The plaintiff seeks monetary damages and disgorgement of
his attorney fees paid to the defendant, which also qualifies as
monetary damages.  See Access Point Med., LLC v. Mandell, 963
N.Y.S.2d 44, 47 (App. Div. 2013).  Therefore, as the plaintiff
concedes, the limitations period for these claims is three
years.  The plaintiff's claim accrued when he first suffered
injury as a result of the defendant's alleged breach of duty.
IDT Corp., 907 N.E.2d at 273.  The plaintiff's claim thus
accrued in November 2007 when he was indicted on federal charges
or in December 2007 when he first learned that the defendant had
allegedly disclosed privileged information to federal

41

authorities.  Because the plaintiff filed this case in January 2014, the claim accrued well before the three-year period prior to the filling of the complaint.

The plaintiff argues that the statute of limitations should have been tolled throughout this time because the defendant has been engaged in a "continuous course of conduct," and the defendant's more recent breaches of duty are within the three-year window.  Int'l Strategies Grp., Ltd. v. Ness, 645 F.3d 178, 183-84 (2d Cir. 2011).  This argument is without merit.  The "continuous course of conduct" doctrine discussed in Ness, based in Connecticut law, would not be applicable here, and neither would any doctrines based in New York law.  See id. (holding that limitations period is tolled where plaintiff can show "(A) a special relationship between the parties giving rise to such a continuing duty, or (B) some later wrongful conduct of a defendant related to the prior act") (internal citations omitted); Dignelli v. Berman, 741 N.Y.S.2d 66, 68 (App. Div. 2002) (discussing "continuous representation doctrine" under New York law, requiring the defendant to still be representing the plaintiff on a related matter); Schandler v. New York Life Ins. Co., No. 09cv10463, 2011 WL 1642574, at *11 (S.D.N.Y. Apr. 26, 2011) (stating that under New York law, when the plaintiff "alleges a continuing wrong, a new cause of action accrues each time defendant commits the wrong").

42

The plaintiff has not plausibly alleged that the defendant was still representing him any time after December 2007 when the plaintiff allegedly learned that the defendant had disclosed confidential information to the federal prosecutors.  There is no allegation that the defendant was representing the plaintiff in the three years prior to January 2014 when this action was brought.  The plaintiff has also failed to allege any wrongs that are related to the defendant's alleged breaches of fiduciary duty here that occurred in that period.  The plaintiff's breach of fiduciary duty claims related to the defendant's cooperation with the federal prosecutors are therefore dismissed.  See Schandler, 2011 WL 1642574, at *11 (holding that the plaintiff's breach of duty claim would be time-barred when the "only alleged wrong" occurred outside the limitations period).

### B.

The defendant argues that the plaintiff's allegations concerning the Follieri venture are also time-barred, that the plaintiff cannot show damages, and that there was no existing fiduciary relationship.

If "an allegation of fraud is essential to a breach of fiduciary duty claim," courts in New York apply a "six-year statute of limitations under CPLR 213 (8)." IDT Corp., 907 N.E.2d at 272.  Therefore, for the plaintiff's claim that the

defendant defrauded him on the Follieri venture to be timely pleaded, the plaintiff's claim must have accrued after January 2008. However, the Complaint alleges that the plaintiff learned on November 30, 2007 that the finder's fee in the Follieri venture was higher than the defendant had told him. Any claim that the plaintiff could plausibly allege accrued at that point, and the plaintiff's claim is consequently time-barred.

Furthermore, the plaintiff cannot plausibly allege that he incurred damages as a result of the defendant's acts in connection with this claim. To state a claim for breach of fiduciary duty, a plaintiff must show that the defendant's breach resulted in damages. SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 342 (2d Cir. 2004). In some cases, the plaintiff need not allege an actual injury to the plaintiff if the plaintiff can show that the defendant was unjustly enriched. Sotheby's, Inc. v. Minor, No. 08cv7694, 2009 WL 3444887, at *11 n.2 (S.D.N.Y. Oct. 26, 2009) (citing Zackiva Commc'ns Corp. v. Horowitz, 826 F. Supp. 86, 88 (S.D.N.Y. 1993)).

The plaintiff has not alleged that he suffered any actual damages as a result of his efforts in finding an investor for the Follieri venture, or that the defendant has improperly benefitted at the plaintiff's expense. Because the plaintiff cannot show any damages, his breach of fiduciary duty claim must be dismissed. See, e.g., Benedict v. Whitman Breed Abbott &

44

Morgan, 973 N.Y.S.2d 341, 344 (App. Div. 2013) (affirming dismissal of breach of fiduciary duty claim where plaintiff failed to prove any damages).

c.

The defendant argues that for the allegations within the limitations period, namely the allegedly defamatory public statements made in December 2013 and the letter sent to federal authorities in May 2014 seeking prosecution of the plaintiff, there was no fiduciary relationship between the plaintiff and the defendant.

"A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. Put differently, a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 980 (N.Y. 2009) (internal quotations and citations omitted).  This is a "fact-specific inquiry." Id.; see also Roni LLC v. Arfa, 963 N.E.2d 123, 125 (N.Y. 2011).

More specifically, the existence of an attorney-client relationship does not depend solely on whether there is a formal agreement between the parties; rather, courts look to the "words and actions of the parties to ascertain the existence of such a

relationship." <u>Moran v. Hurst</u>, 822 N.Y.S.2d 564, 566 (App. Div.
2006) (internal citations omitted); <u>see also</u> <u>Steinbeck v.</u>
<u>Steinbeck Heritage Found.</u>, 400 F. App'x 572, 577 (2d Cir. 2010)
(summary order) (holding that allegations that attorneys held
themselves out to be experts and told the plaintiff they had his
best interests in mind were insufficient to show an attorney-
client relationship, especially when the plaintiff was
represented by other counsel).

The Amended Complaint alleges that the defendant received a
subpoena for the federal investigation of the plaintiff on March
12, 2007, and subsequently claimed to be conflicted from
representing the plaintiff.  Am. Compl. ¶¶ 136-37.  At this
point, Kenneth Breen began representing the plaintiff.  Am.
Compl. ¶ 137.  The Amended Complaint makes several allegations
regarding acts the defendant committed to convince the plaintiff
that he was still acting as his agent in some way, including
maintaining contact with him throughout 2007, Am. Compl. ¶ 141,
and providing assurances regarding the Follieri Venture in late
2007.  Am. Compl. ¶ 88.  There are no allegations regarding any
relationship between the plaintiff and the defendant after
December 2007.  Indeed, the plaintiff alleges that "[o]n or
about January 23, 2008, Mr. Kerik's lawyers met with Defendant
Tacopina and his attorney, regarding Mr. Tacopina's *prior*
representation of Mr. Kerik, and his cooperation with the

46

federal prosecutors." Am. Compl. ¶ 148 (emphasis added).
Therefore, the plaintiff cannot plausibly allege that any
fiduciary relationship existed in December 2013 or May 2014.

The plaintiff appears to argue that the defendant still
owed some duty to the plaintiff, even if the plaintiff was a
former client. New York Rule of Professional Conduct 1.9
governs an attorney's duties to former clients, and it deals
with client representations that are forbidden by a conflict of
interest with the interests of a former client, and preserving
the former client's confidential information. N.Y. Rules of
Prof'l Conduct § 1.9. The plaintiff is not alleging that the
defendant disclosed any confidential information in either his
allegedly defamatory public statements or in the letter written
to federal prosecutors. The plaintiff has not plausibly alleged
that the defendant owed any fiduciary duty to him in December
2013 or May 2014, and thus cannot state a claim based on these
acts. See Moran, 822 N.Y.S.2d at 566 (affirming dismissal of
malpractice claim because the record was "devoid of any
evidence" that an attorney-client relationship existed).

Because none of the acts that the plaintiff alleges
constitute breaches of fiduciary duty plausibly state a claim
upon which relief may be granted, the defendant's motion to
dismiss the plaintiff's claim for breach of fiduciary duty is
**granted**.

47

## V.

The plaintiff's third and final claim is for defamation based on several oral statements made by the defendant or his counsel. The defendant has moved to dismiss this claim for failure to state a claim upon which relief can be granted.

## A.

As an initial matter, the parties dispute which state's substantive law applies to the plaintiff's defamation claim. The defendant argues for New Jersey law, while the plaintiff argues for New York law.

Because the New Jersey District Court found that venue was improper in New Jersey and transferred this case pursuant to 28 U.S.C. § 1406, the choice of law rules of New York apply because New York is the proper forum state. See Caribbean Wholesales & Serv. Corp. v. US JVC Corp., 855 F. Supp. 627, 629 (S.D.N.Y. 1994) ("If the transfer was made pursuant 28 U.S.C. § 1406(a), because venue was improper in the transferor court, then the transferee state's law is applicable."). The New York Court of Appeals has held that "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." GlobalNet Fin. Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006) (quoting In re Allstate Ins. Co., (Stolarz), 613 N.E.2d 936, 937 (N.Y. 1993)). If there is a

48

conflict, then New York courts apply an "interest analysis" to tort claims, which largely consists of consideration of "the parties' domiciles and the locus of the tort." Id. at 384 (quoting Schultz v. Boy Scouts of Am., Inc., 480 N.E.2d 679, 684 (N.Y. 1985)).

New York and New Jersey law regarding defamation is sufficiently similar to end the inquiry at step one.  The basic pleading requirements for defamation between New York and New Jersey do not conflict.  Both states follow the Restatement definition of defamation.  In addition to damages, the elements of a defamation claim are: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence." DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts § 538); Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (App. Div. 1999) (citing Restatement (Second) of Torts § 558).  The definitions of "defamatory" in the two states do not conflict. See DeAngelis, 847 A.2d at 1269 (stating that "loose, figurative or hyperbolic language" is not likely defamatory); Dillon, 704 N.Y.S.2d at 5 (same); Gross v. New York Times Co., 623 N.E.2d 1163, 1167 (N.Y. 1993) (defining what constitutes a "non-actionable opinion"); Kotlikoff v. The Cmty. News, 444 A.2d 1086, 1091 (N.J. 1982) (same).  And finally, despite the

defendant's argument to the contrary, the states appear to be in accord regarding the requirement to plead special damages or slander per se for slander.  See Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001) (requiring slander plaintiff to plead special damages or allege one of four slander per se categories); McLaughlin v. Rosanio, Bailets & Talamo, Inc., 751 A.2d 1066, 1072 (N.J. Super. Ct. App. Div. 2000) (same).  See also Treppel v. Biovail Corp., No. 03cv3002, 2004 WL 2339759, at *7 (S.D.N.Y. Oct. 15, 2004) (comparing New York and New Jersey defamation law and finding no conflict), on reconsideration on other grounds, No. 03cv3002, 2005 WL 427538 (S.D.N.Y. Feb. 22, 2005).

Consequently, there is no need to engage in "interests" analysis.  New York law is applicable, "although consideration of the persuasive aspects of cases decided in other jurisdictions . . . is not precluded by this finding."  Purdue Frederick Co. v. Steadfast Ins. Co., 801 N.Y.S.2d 781, at *13 (Sup. Ct. 2005).

### B.

The plaintiff's defamation claim is based on several oral statements by the defendant or the defendant's counsel, and therefore alleges a claim of slander.  See Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013)

The plaintiff alleges that the defendant defamed the plaintiff through the following acts: 1) On September 24, 2008,

the defendant implicitly accused the plaintiff of lying when the
defendant told the New York Post that the defendant denied
discussing privileged matters with prosecutors; 2) On or about
December 28, 2013, in the New York Daily News, the defendant and
his counsel accused the plaintiff of spreading "lies and
innuendo" while again denying that the defendant discussed
privileged matters; 3) On December 29, 2013, the defendant
implicitly accused the plaintiff of lying when the defendant
denied to the New York Post that the defendant knew he was on
the witness list when he called the plaintiff; 4) On May 12,
2014, the defendant and his counsel stated in the New York Post
that the plaintiff has an "allergy to the truth"; and 5) On May
19, 2014, in a New York Post article about the defendant's
letter to prosecutors, the defendant and his counsel wrongfully
accused the plaintiff of committing perjury.[5]

To state a claim for slander, a plaintiff must allege a
"false statement, published without privilege or authorization
to a third party, constituting fault as judged by, at a minimum,
a negligence standard, and, it must either cause special harm or
constitute defamation per se."  Dillon, 704 N.Y.S.2d at 5
(citation omitted).  The plaintiff has alleged that all of the

---

[5] The plaintiff had also alleged that the defendant committed defamation when
the defendant's counsel stated to reporters that the plaintiff is a "con man"
who belongs in a "sanitarium."  Am. Compl. ¶ 160.  The plaintiff withdrew
this allegation during oral argument.  Hr'g Tr. 46, Oct. 16, 2014.

predicate statements of the defendant were false, that they all concerned the plaintiff, and the parties do not appear to dispute that that they were unprivileged and published to a third party. The defendant argues that the plaintiff has not sufficiently pleaded special damages or that the statements were slander per se. The defendant also argues that the plaintiff has failed to plead the requisite level of fault.[6]

**i.**

The defendant argues that for all of the alleged statements except the statement accusing the plaintiff of perjury, the plaintiff has failed to allege slander per se or adequately plead special damages.[7]

The plaintiff must show, as an element of his prima facie case of defamation, that he was "harmed by the alleged defamation." McLaughlin, 751 A.2d at 1071. See also Cammarata

---

[6] The defendant also argues that all of the alleged statements are not capable of being interpreted as defamatory, either because the statements are routine denials of the plaintiff's accusations, hyperbolic statements, or non-actionable opinions. See Jewett v. IDT Corp., No. A04cv1454, 2007 WL 2688932, at *9 (D. N.J. Sept. 11, 2007) (dismissing defamation claim based on the defendant's statement that the plaintiff's other lawsuit was "baseless" because a "reasonable listener" would interpret the statement as the speaker's "opinion that the opponent's case has no merit"); Dillon, 704 N.Y.S.2d at 5 ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable.") Kotlikoff, 444 A.2d at 1091 ("Where an opinion is accompanied by its underlying nondefamatory factual basis, a defamation action premised upon that opinion will fail, no matter how unjustified, unreasonable or derogatory the opinion might be.") Because the Court finds on other grounds that none of the plaintiff's allegations state a claim for defamation, it is unnecessary to address this additional argument.

[7] Defamation actions under New York law are subject to a one year statute of limitations. N.Y. C.P.L.R. § 215(3). Therefore, all of the alleged statements are timely except for the alleged statement made in 2008.

v. Cammarata, 878 N.Y.S.2d 163, 164 (App. Div. 2009) (granting
motion to dismiss plaintiff's slander claim because the
plaintiff failed to plead that he sustained special damages);
Ward v. Zelikovsky, 643 A.2d 972, 985 (N.J. 1994) (dismissing
slander claim for failure to show special damages).  The
plaintiff has failed to allege any special damages as a result
of the defendant's statements.

However, when the plaintiff alleges slander per se, "the
law presumes that damages result, and they need not be alleged."
Liberman v. Gelstein, 605 N.E.2d 344, 347-48 (N.Y. 1992).  Four
types of statements qualify as slander per se: (1) accusations
of a serious crime, (2) statements tending to injure another in
his or her trade or profession, (3) accusations of having a
"loathsome disease," or (4) "imputing unchastity to a woman."
Id. at 347.  See also McLaughlin, 751 A.2d at 1072.  Both New
York and New Jersey courts have criticized slander per se and
the resulting presumption of damages, and consequently have
interpreted the categories restrictively.  Liberman, 605 N.E.2d
at 348 n.1 (stating that "[t]he presumed-damages rule has been
found unconstitutional in certain First Amendment cases and
criticized for use in defamation cases generally") (internal
citations omitted); Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d
348, 398 (S.D.N.Y. 1998) (stating that New York law is "quite
restrictive in terms of which crimes support a valid claim" of

slander per se); Ward, 643 A.2d at 984 ("Because the goal of
defamation law should be to compensate individuals for harm to
reputation, the trend should be toward elimination not expansion
of the *per se* categories.") (citations and quotations omitted).
Nevertheless, the doctrine remains viable.   See Thomas H. v.
Paul B., 965 N.E.2d 939, 942 (N.Y. 2012) (stating that "[a]
verbal utterance that inaccurately accuses a person of a serious
crime can be slander per se"); Salzano v. North Jersey Media
Grp. Inc., 993 A.2d 778, 803 (N.J. 2010) (stating that the
doctrine "retains vitality, including, in particular, as it
relates to the false imputation of a criminal act.")

    The plaintiff argues that the statements accusing him of
being dishonest are slander per se because they impugn his
credibility and suggest a quality that makes the plaintiff unfit
for his trade or business.   The New York Court of Appeals has
stated that the "trade or business" exception is "limited to
defamation of a kind incompatible with the proper conduct of the
business, trade, profession or office itself. The statement must
be made with reference to a matter of significance and
importance for that purpose, rather than a more general
reflection upon the plaintiff's character or qualities."
Liberman, 605 N.E.2d at 348 (citing Prosser and Keeton, Torts
§ 112, at 791 (5th ed.)).   See also Ricciardi v. Weber, 795 A.2d
914, 928 (N.J. Super. Ct. App. Div. 2002) (citing Restatement

54

(Second) of Torts § 573 (1977)) ("The words must affect the plaintiff in a way that is peculiarly harmful to one engaged in his trade. Disparagement of a general character, which is equally discreditable to all persons, is not enough."), abrogated on other grounds by Salzano v. N. Jersey Media Grp. Inc., 993 A.2d 778 (N.J. 2010).

In this case, the plaintiff has not alleged what his current trade or business is, and how the defendant's accusations that the plaintiff was "spreading lies and innuendo" and has an "allergy to the truth" affect that trade.  The plaintiff therefore cannot recover for defamation based on these statements without showing damages, and the plaintiff's claim based on these statements is dismissed.  See Moriarty, 2014 WL 884761, at *5-6 (granting defendant's motion to dismiss slander per se claim because the defendant's statement that the plaintiff was intoxicated while driving did not specifically reflect on the plaintiff's fitness for elected office); Rufeh v. Schwartz, 858 N.Y.S.2d 194, 197 (App. Div. 2008) (granting defendant's motion to dismiss slander per se claim because allegations of fraud and deceit were "nothing more than a general reflection upon the plaintiffs' character or qualities," rather relating than specifically to the plaintiff's position as an officer at a financial firm).

Therefore, the plaintiff cannot state a claim for defamation based on any of the alleged statements other than the accusation of perjury.[8]

### ii.

The defendant argues that all of the alleged statements must be dismissed because the plaintiff has not sufficiently pleaded the requisite level of fault, actual malice.

The plaintiff has conceded that he is a public figure.  A public figure may not recover for defamation absent proof of "actual malice."  Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000) (citing Curtis Pub'g Co. v. Butts, 388 U.S. 130, 155 (1967) and New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)).  The plaintiff has conceded that he must plead actual malice in order to survive a motion to dismiss.  Hr'g Tr. 43.[9]  To show actual malice, the

---

[8] Because the May 19 statement to the New York Post referencing the perjury letter accuses the plaintiff of a serious crime, this statement fits into the first category of slander per se.  See Thomas H., 965 N.E.2d at 942.
[9] Whether a plaintiff is ordinarily required plausibly to allege actual malice at the pleading stage appears to be an open question.  The Second Circuit Court of Appeals has advised that resolution of the actual malice inquiry "typically requires discovery."  Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001).  Consequently, some courts have been hesitant to resolve questions of actual malice at the pleading stage.  See, e.g., World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 528 (S.D.N.Y. 2001) (holding that, at motion to dismiss stage, actual malice could be reasonably inferred); Abakporo v. Sahara Reporters, No. 10cv3256, 2011 WL 4460547, at *11-12 (E.D.N.Y. Sept. 26, 2011) (declining to decide whether the plaintiff pleaded actual malice on a motion to dismiss); Connolly v. Wood-Smith, No. 11cv8801, 2012 WL 7809099, at *9-10 (S.D.N.Y. May 14, 2012) (similar), report and recommendation adopted as modified on other grounds, No. 11cv8801, 2013 WL 1285168 (S.D.N.Y. Mar. 28, 2013).  However,

plaintiff must allege sufficient facts from which to infer that the defendant knew the alleged defamatory statement was false when he made it or recklessly disregarded whether it was false or not.  Kipper v. NYP Holdings Co., 912 N.E.2d 26, 29 (N.Y. 2009) (citing New York Times, 376 U.S. at 279-80).  The Supreme Court has defined "reckless disregard" as requiring that the defendant "entertained serious [subjective] doubts as to the truth of his publication."  St. Amant v. Thompson, 390 U.S. 727, 731 (1968).

Therefore, in order for the plaintiff to plead that the defendant acted with actual malice by accusing the plaintiff of committing perjury in his original Complaint, the plaintiff must allege that when the defendant's counsel made this statement, he

---

numerous district courts and some courts of appeals have interpreted Iqbal and Twombly to require that a plaintiff who is a public figure plausibly allege actual malice.  See, e.g., Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 686-87) (affirming dismissal of defamation claim and stating that "a plaintiff must . . . lay out enough facts from which malice might reasonably be inferred"); Adelson, 973 F. Supp. 2d at 503 ("[T]he pleading standards under Iqbal and Twombly require courts to dismiss defamation actions where the allegations in the complaint do not plausibly suggest actual malice and are merely conclusory."); Biro v. Conde Nast, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013) ("While neither the Supreme Court nor the Second Circuit has precisely articulated the effect of Iqbal and Twombly on defamation cases, Iqbal itself squarely holds that, where a particular state of mind is a necessary element of a claim, defendant's pleading of that state of mind must be plausible and supported by factual allegations."); Moriarty, 2014 WL 884761, at *3 (holding that under Iqbal, a plaintiff "alleging defamation with actual malice must plead facts from which malice might reasonably be inferred").
Due to the plaintiff's concession, the Court will assume for the purposes of this motion alone that actual malice must be pleaded.  The plaintiff's concession goes to the facts that he must plead, rather than the legal theory.  Therefore, the Supreme Court's recent decision, Johnson v. City of Shelby, Miss., No. 13-1318, 2014 WL 5798626, at *1 (U.S. Nov. 10, 2014), does not require a different result.

knew that the plaintiff did not perjure himself through his allegations in his original sworn Complaint or entertained serious subjective doubts as to the truth of that statement. The plaintiff has not made this showing.

The plaintiff alleges that the defendant, through his counsel, in a statement published by the New York Post, "wrongfully accused Mr. Kerik of committing perjury" and "stated their hopes that he would be criminally charged." Am. Compl. ¶ 160. Conceding that this provision of the Amended Complaint charging slander does not allege actual malice, the plaintiff points to another paragraph in the Amended Complaint relating to the RICO claim. In that paragraph, the Amended Complaint describes the letter that the defendant's lawyer sent to the federal prosecutors and charges that the defendant, through his counsel, "misrepresents the original Verified Complaint in this action in an attempt to falsely mislead [the federal prosecutors] into believing that [] Mr. Kerik is now claiming innocence and that he therefore either perjured himself in his prior plea allocution or is perjuring himself now." Am. Compl. ¶ 125. The plaintiff argues that this paragraph should be read into the alleged May 19 statements to the New York Post that refer to the letter, and that together these paragraphs plausibly allege actual malice.

The defendant's counsel argues that when he wrote the letter and made the statements to the New York Post, he had good reasons to believe that the plaintiff's original sworn Complaint was directly contradictory to the plaintiff's guilty plea, and that the plaintiff had committed perjury either in the sworn plea allocution or in the sworn Complaint.  In the letter, the defendant's counsel had referred to the plaintiff's allegation in the original Complaint that, "[b]ut for the conduct" of the defendant, he would not have "pled guilty to federal charges," and that the defendant was the "direct and proximate cause" of the plaintiff's guilty plea.  Am. Compl. Ex. D; Compl. ¶¶ 67, 73.  The defendant argues that he honestly believed that these statements were in direct contradiction to the plaintiff's sworn plea allocution, in which the defendant's counsel believed that the plaintiff must have stated that he was pleading guilty solely because he was guilty of the charged crimes.  Am. Compl. Ex. D.  In the letter, the defendant cited case law to support his argument that two contradictory sworn statements could constitute perjury.  Graham v. Leonardo, 166 F.3d 1200, at *3 (2d Cir. 1998) ("If his testimony . . . at trial was to be believed, it follows that he must have lied at his previous plea allocutions; Conversely, if he had been truthful on those earlier occasions, he must have been lying at . . . trial.  Either way, [he] was shown to be a perjurer.")  The defendant's

counsel argues that his statements to the Post merely refer to
the honestly held convictions expressed in the letter.

"Because direct evidence of actual malice is rare, it may
be proved through inference, and circumstantial evidence." Biro
v. Conde Nast, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013) (quoting
Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009)).  In Biro,
the court summarized various circumstances that courts have
found to be probative of actual malice, including where: "a
story is fabricated or is based wholly on an unverified,
anonymous source," "the defendant fabricates a statement made by
a source," "the defendant's allegations are so inherently
improbable that only a reckless person would have put them in
circulation," "there are obvious reasons to doubt the veracity
of the informant or the accuracy of his reports," "the defendant
has a motive for defaming the plaintiff," "the defendant knows
or suspects that [he] has committed an error and refuses to
acknowledge it," and "the words or acts of the defendant before,
at, or after the time of the communication indicate that the
defendant knew that his or her statement was or may well have
been false."  Id. at 277-78 (internal quotations and citations
omitted).

In this case, the plaintiff has not alleged any facts
indicating that the defendant's statements were "so inherently
improbable" that he must have seriously doubted them when he

60

spoke them. Id. at 277 (citing Behar, 238 F.3d at 174). It is notable that although the Amended Complaint now states clearly that it is not a "recantation" of any plea allocution, Am. Compl. ¶ 32 n.3, no such clear statement is found in the original Complaint. The plaintiff has not alleged any words or acts of the defendant showing that the defendant knew his statements to the New York Post were false.

The only circumstance that the plaintiff alleges is that the defendant had a motive for defaming the plaintiff: he wanted the prosecutors to pursue criminal perjury charges against the plaintiff. But circumstantial evidence of motive, standing alone, cannot satisfy the actual malice standard. See Tucker v. Fischbein, 237 F.3d 275, 284 (3d Cir. 2001).

Assuming the plaintiff's allegations regarding the letter may be imputed to the statements to the Post, as the plaintiff argues, they do not help the plaintiff. They do not show that the defendant's counsel entertained serious subjective doubts as to the truth of his accusation. Rather, they provide the legal explanation for why he reasonably believed that the charge was merited.

The defendant's perjury accusation may have been "careless and perhaps irresponsible," but there are no allegations that he knew that the plaintiff did not commit perjury or entertained serious subjective doubts about the truth of the accusation.

61

Lawrence v. Bauer Publ'g & Printing Ltd., 446 A.2d 469, 477
(N.J. 1982) (affirming reversal of jury finding of actual malice
because the defendant honestly believed his defamatory
accusation was true).  See also DeAngelis, 847 A.2d at 1270
(holding that there was insufficient evidence of actual malice
because the defendant honestly believed the perjury allegations
he made were true); Tucker, 237 F.3d at 284 (affirming district
court's finding of no actual malice in defamation claim based on
the defendant's misinterpretation of the plaintiff's Complaint
because the jury could find no "more than [defendant's]
negligence in jumping to [a] conclusion").

Because the plaintiff cannot show that he has plausibly
alleged that the defendant acted with actual malice as to the
perjury statement, the plaintiff cannot state a claim for
defamation based on this statement.  All of the other statements
have been dismissed for the plaintiff's failure to plead special
damages or slander per se.  The defendant's motion to dismiss
the plaintiff's defamation claim is therefore **granted.**

### Conclusion

To the extent not specifically addressed above, any
remaining arguments are either moot or without merit.  For the
reasons explained above, the defendant's motion to dismiss the
plaintiff's Amended Complaint in its entirety is **granted.**  The
Clerk is directed to enter judgment **dismissing the Amended**

**Complaint with prejudice.**  The Clerk is also directed to **close**

**all pending motions.**

**SO ORDERED.**

**Dated:**     **New York, New York**
          **December 2, 2014**          _____/s/_____
                                         **John G. Koeltl**
                                **United States District Judge**